FRIES-BRESLIN CO. v. BERGEN et al.

(Circuit Court of Appeals, Third Circuit. November 29, 1909.)

**1. INSURANCE (§ 104*)—BROKERS—DUTIES AND LIABILITIES TO PRINCIPAL—ACTION FOR NEGLIGENCE.**

Plaintiff, a manufacturing company, employed defendants, who were insurance brokers, to secure good insurance on its property, and they acted under such employment for several years, renewing the insurance from time to time, and retaining the policies in their possession. During such time the president of plaintiff called upon them and stated that the company had given a mortgage on its entire plant, and desired the policies to take to the attorney for the mortgagee for the purpose of having an indorsement thereon making the loss, if any, payable to the mortgagee as his interest might appear. They were so indorsed and returned to defendants; no objection being made by the attorney to their form. Later the president again told defendants that plaintiff had made another mortgage "of the same kind." The policies were of the standard form, containing a provision that they should be void if the subject of insurance was personal property and it should become incumbered by chattel mortgage. *Held*, that there was nothing in plaintiff's communication to defendants to advise them that the mortgages covered personal property, so as to affect the validity of the policies, especially as they were accepted without objection by the mortgagee's attorney, and that defendants were under no duty to examine the records, and were not chargeable with negligence in permitting the policies to stand or renewing the same when they expired.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 179; Dec. Dig. § 104.*]

**2. INSURANCE (§ 104*)—BROKERS—DUTIES AND LIABILITIES TO PRINCIPAL.**

Insurance brokers, employed by an owner of property to effect insurance thereon, which they do, the policies being of usual and standard form, are under no duty to inform the insured as to the provisions and conditions of the written policies unless requested; but it devolves upon the insured to inform himself in respect to the terms of the contracts.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 179; Dec. Dig. § 104.*]

**3. COURTS (§ 354*)—FEDERAL COURTS—CONFORMITY TO STATE PRACTICE.**

The procedure prescribed by the Pennsylvania practice act of April 22, 1905 (P. L. 286), giving a party requesting binding instructions, which have been refused, or the point reserved, the right to "move the court to have all the evidence taken upon the trial duly certified and filed, so as to become a part of the record, and for judgment non obstante veredicto upon the whole record," is adaptable to the federal courts, and one which the conformity statute (Rev. St. § 914 [U. S. Comp. St. 1901, p. 684]) requires Circuit Courts within the state to follow.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 934; Dec. Dig. § 354.*

Conformity of practice in common-law actions to that of state court, see notes to O'Connell v. Reed, 5 C. C. A. 594; Nederland Life Ins. Co. v. Hall, 27 C. C. A. 392.]

In Error to the Circuit Court of the United States for the Eastern District of Pennsylvania.

Action by the Fries-Breslin Company against William Bergen and John A. Snyder. Judgment for defendants (168 Fed. 360), and plaintiff brings error. Affirmed.

Graham C. Woodward, Roger Foster, and Moses Jaffe, for plaintiff in error.

Frank R. Shattuck and Alex. Simpson, Jr., for defendant in error.

Before GRAY, BUFFINGTON, and LANNING, Circuit Judges.

GRAY, Circuit Judge. Suit in the court below was brought by the plaintiff in error, a corporation of the state of New Jersey, against the defendants, citizens of the state of Pennsylvania, to recover damages alleged to have been incurred by reason of defendants' negligence in the performance of their undertaking with the plaintiff to keep its property safely insured. The case was submitted to the jury, and resulted in a verdict in favor of the plaintiff. At the close of the evidence, the defendants requested the court to charge the jury that the verdict must be for the defendants. This was refused by the court, and, after the verdict, under the Pennsylvania practice act of 1905 (P. L. 286), the defendants requested the court to have all evidence taken upon the trial duly certified and filed, so as to become part of the record and moved for judgment non obstante veredicto. This motion was granted by the court below and judgment accordingly entered for the defendants, notwithstanding the verdict. To this judgment this writ of error has been sued out by the plaintiff below.

From the evidence certified in the record, it appears that, some years prior to October 3, 1904, the date of the fire in question, John N. Carroll, president of the plaintiff company, which was engaged in the manufacture of rugs in the city of Camden, in the state of New Jersey, on behalf of said company employed the defendants, as insurance brokers, to place insurance upon the buildings, fixtures of said company there situate, and upon its rugs and yarns, and other materials of manufacture. The amount of this insurance at first was about $100,000, but there was thereafter an increase in the insurance to about $300,000, which was supposed to be outstanding when the fire occurred. The policies taken out by the defendants pursuant to their instructions, which seem to have been, according to the witness Carroll, simply "to get us good insurance and at the best rate they could get," were kept by the defendant, presumably pursuant to an understanding to that effect on the part of the plaintiff, and were renewed or changed from time to time, as occasion required. The amount of premiums of about $3,000 was paid in checks or notes to the order of the defendant, Bergen. The policies were issued by many companies, and were all of what is known as the standard form used in Pennsylvania and New Jersey, and contained the following clause required by that form:

"This entire policy, unless otherwise provided by agreement indorsed thereon or added thereto, shall be void * * * if the subject of insurance be personal property and be or become incumbered by chattel mortgage."

So far as appears from the record, at the time defendants were so employed by the plaintiff in 1893, and thereafter until April, 1902, about two years before the fire in question, there was no mortgage upon either its real or personal property. Somewhere about the last mentioned date, it appears by the testimony of Carroll, president of the plaintiff company, that he went to the defendants' office and told

them that they "had placed a mortgage on the place; that they had placed a mortgage of $50,000 on the entire plant"; that he came for the purpose of getting the policies and taking them over to the attorney of a certain Mr. Fitzgerald, the mortgagee, for the purpose of having indorsed thereon, that "loss, if any, would be payable to said mortgagee as his interest might appear." A little more than a year thereafter when his second mortgage was made, he told the defendants that they "had placed another mortgage, the same as the first one but that the mortgagee did not want any policy. They said that was all right." The two defendants whose offices were in Philadelphia, also testified as follows: One of the defendants, Snyder, in reply to the question, "What knowledge had you of the character of the Wilson Fitzgerald mortgage which has been here referred to?" answered:

"The statement of Mr. Carroll, that he had placed a mortgage of $50,000 on the property at Camden. Q. Did he state what was the character of the mortgage? A. No, sir. Q. When did you first learn that the Wilson Fitzgerald mortgage covered other than the buildings and machinery in the buildings? A. At a meeting of the adjusters after the fire."

He further testifies that the only information that he had in regard to this mortgage was that "Mr. Carroll came to our office and stated that a mortgage had been placed upon the property and he wanted the policies to take over to the attorney's office (in New Jersey) representing the mortgagee"; that he got them and took them over himself; that they were afterward brought back, a number of them having been indorsed as above stated, "loss, if any, payable to Wilson Fitzgerald."

The other defendant, Bergen, testifies that he first learned of the existence of the Fitzgerald mortgage about the time. or shortly after, it was created, "through Mr. Carroll, who told us that such a mortgage was created, and it was necessary to have the policy so indorsed." In reply to the question, "Did he say what that mortgage covered?" he answered, "I cannot positively say. I presumed at the time it was on the buildings and machinery;" that he knew of the sending of the policies over to Mr. Fitzgerald, or his counsel, for the purpose of having the indorsement of the loss payable on them; that Mr. Carroll took the policies away and also brought them back. Mr. Carroll on the other hand, testifies that he did not take the policies away, but that the defendants sent them to the attorney of the mortgagee in New Jersey at his request.

This is the substance of all the testimony, as disclosed by the record, bearing upon the information alleged in the statement of claim to have been given to the defendants, as to the character of these mortgages. There is positively no evidence that defendants were informed that these mortgages covered personal as well as real property. The mortgages were not produced, and they were only mentioned by the president of the company as incident to his request that the policies should be sent to the attorney of the mortgagee for the indorsement usual in such cases. It is insisted, however, by the plaintiff in error, that it was the duty of the defendants under their general undertaking as insurance brokers, to specially notify plaintiff in error of this condition of the policy in regard to chattel mortgages, and that, not having done so, they thereby permitted or induced the plaintiff to execute the mort-

gages referred to, including therein both real and personal property. The statement of claim contains no distinct charge of negligence on this ground. the only reference thereto being as follows:

"The plaintiff moreover avers that it had no knowledge of the terms and conditions of the said insurance policies, but acted on the sole advice of the said defendants, who were acting as its skilled insurance agents or brokers."

It is not stated in what respect plaintiff "acted on the sole advice of said defendants," but there is not a particle of evidence that defendants gave any advice in regard to the placing of the mortgages in question, or had any knowledge of the existence of such mortgages, other than as above referred to, or had any direct information from the plaintiff, or otherwise, that the said mortgages covered the personal property of the plaintiff. In the absence of such information, and without request or inquiry by the plaintiff in that regard we do not conceive it to have been the duty of the defendants, under the circumstances disclosed in this record to have specially informed plaintiff as to the existence in the standard policies of this proviso against chattel mortgages any more than it was their duty to inform plaintiff of the other numerous conditions embodied in such policy. The duty of the defendants as insurance brokers, was to place and keep placed the insurance he was instructed to secure on the property of the plaintiff, in reputable companies of good standing and at reasonable rates. They were agents of the plaintiff for that purpose. They did not make the contract with the insurance companies as agents on behalf of the plaintiff as their principal, but performed the brokers' duty of bringing the insured and the insurer into contractual relation. As such contractual party, it devolved on the plaintiff to inform itself of the stipulations and conditions contained in the contracts made between it and the insurance companies. As these contracts were in writing, it did not devolve upon the defendants, as brokers, to inform the plaintiff as to what these stipulations and conditions were, or explain their meaning, in the absence of a request so to do, or of an exigency created by some particular situation not disclosed in this record. It may be conceded however, as the learned judge of the court below concedes, that if the chattel mortgages were placed upon the property by the advice of the defendants, or they were afterward informed of their existence by plaintiff, and they in the face of this knowledge, secured new policies, or renewed or maintained policies, containing the prohibition against chattel mortgages resulting in avoiding all the insurance, the defendants would be liable for negligence. Or if, having the policies in their possession, they had been asked whether any proposed action on the part of the plaintiff was within the prohibition of the policies, they had answered falsely, or without duly informing themselves as to the fact, to the injury of the plaintiff, or if in any other respect where their counsel or advice, as to matters of fact, was to their knowledge relied upon by the plaintiff they had not used due care and diligence in giving such counsel or advice, they would be liable.

But negligence when averred as a ground of liability must be proved as a fact, and cannot be presumed in this case any more than in others.

The charge of negligence made by the plaintiff is expressly founded

on the averment that the defendants, when renewing, or changing or maintaining the policies from time to time, after the creation of the mortgages in question, had been informed by the plaintiff, or otherwise had knowledge, that said mortgages covered both real and personal property, and were chattel mortgages within the inhibition of the proviso in the policies as above quoted. The burden is upon the plaintiff to prove this averment as a matter of fact, and it has not been successfully sustained by the mere showing that, on a certain occasion after the creation of these mortgages, defendants were applied to by the president of the plaintiff company for the policies, for the purpose of having them delivered in another state to the attorney of the mortgagee, for inspection and indorsement as collateral security to the mortgage, it being conceded that no information was then or at any time given, as to the character of the mortgages, other than that it was upon the place or plant or property. Inasmuch as mortgages on real property are among the oldest forms of security for debt known to our laws, and that chattel mortgages are of comparatively recent origin and infrequent in comparison with the older real estate mortgages, the assumption would have been a natural one on the part of the defendants, that the mortgages incidentally referred to, but not produced were the ordinary real estate mortgages on the buildings, ground and plant of the plaintiff company. Clearly there was neither direct information that the mortgage included chattels nor information that should have put them upon inquiry as to its character. The defendants were still the brokers of the plaintiff, acting under its instructions, as to the renewal of policies whose stipulations and conditions it was bound to know. In this situation, the defendants, as said by the learned judge of the court below, were warranted in concluding that a renewal of the policies, in the form theretofore secured, would be a compliance with their duty as agents under the instructions of the plaintiff. Carroll did not call on them for information, or to know what he might do under the policies. He called to get the policies for his purpose, about which he had not consulted the defendants and merely told them what he wanted to do with the policies; that is, he wanted them as collateral for a mortgage he had placed on the plant and the mortgagee and his attorney accepted the same for that purpose.

This leads us to remark that the acceptance by the attorney of the mortgagee of these policies as collateral, so far from supporting the contention of the plaintiff, might well have assisted to confirm the assurance given by the absence of information to the contrary, that the mortgage referred to by Carroll was merely a real estate mortgage, or, at least, not one that would have vacated the policies that were accepted by the legal adviser of the mortgagee as collateral.

Moreover, it is not without significance that the plaintiff, in its statement of claim, has predicated its charge of negligence upon the express averment, that the defendants were informed or had knowledge that the mortgage placed upon the property some two years before the fire included certain chattels, as well as the real estate of the plaintiff. The language of the said statement of claim in this respect is as follows:

"The plaintiff avers that at the time of such employment it informed the defendants that the said property was incumbered by a mortgage which included in its lien all the real and personal property of the plaintiff and that subsequently when a second mortgage was negotiated it informed the defendants that the said property was incumbered by the mortgages which included in their lien all the real and personal property of the plaintiff, to wit, one mortgage to Wilson Fitzgerald in the sum of $50,000 and one to John J. Burleigh in the sum of $60,000, and defendants well knew that the said mortgages were outstanding and valid liens against all the real and personal property of the plaintiff company and were chattel mortgages as well as mortgages of the realty. It then and there became and was the duty of the defendants," etc.

The learned counsel of the plaintiff were correct in the theory upon which they sought to establish the liability of the defendants. We have already shown how far short of supporting this theory is the evidence disclosed by the record. Not only was there a variance between the probata and the allegata, but, as we have already indicated in our opinion, the things proved, even if properly averred, are not sufficient to warrant a finding by the jury of negligence on the part of the defendants.

We think, therefore, the court below did not err in granting the motion for judgment non obstante veredicto.

It is necessary, however, to notice the contention of the plaintiff in error, that the federal courts are without jurisdiction to entertain the motion for judgment non obstante veredicto, and the accompanying procedure prescribed by the Pennsylvania practice act of 1905. It is urged that this procedure is peculiar to the practice of the state courts and is required to be reviewed by courts specially named in the statute. This Pennsylvania practice act has been referred to, and has not infrequently been brought to the attention of this court in cases where the granting or refusal of judgments non obstante veredicto have been the subjects of review. The act enlarges the scope of the common law motion for judgment for plaintiff, notwithstanding the verdict for the defendant, by permitting it to be made by either plaintiff or defendant, when the verdict is against either. It is in general a more convenient method, so far as a defendant is concerned, of reaching practically the same result as was sought by a motion for a compulsory nonsuit, or for peremptory instructions at the close of the evidence, or by a motion in arrest of judgment, made by the defendant after the verdict or by the practice prevalent in the Pennsylvania courts, of directing a verdict for the plaintiff and reserving the question, whether there is any evidence in the case entitling the plaintiff to recover. We think, under the conformity provisions of section 914 of the Revised Statutes (U. S. Comp. St. 1901, p. 684), the Circuit Court was required to recognize the practice authorized by the said Pennsylvania act of 1905, there being nothing incongruous therein with the organization of the federal courts or their settled rules of procedure. It appears that under the Pennsylvania act a motion may be made for a new trial, simultaneously with a motion for judgment non obstante. The view taken by this court, that the judgment below should be affirmed, makes it unnecessary to consider the interesting question, whether the court below could have reserved the question of a new trial, to be disposed of in the event of a reversal.

The judgment of the court below is hereby affirmed.