SMITH et al. v. JONES et al.

(Circuit Court of Appeals, Third Circuit. June 3, 1910. Rehearing Denied.)

No. 62.

1. STREET RAILROADS (§ 52*)—SALE OF BONDS—CONSTRUCTION OF CONTRACT.
A written contract for the sale and purchase of bonds of an insolvent street railroad company, made with a bondholders committee, *held* not to have been so modified by a supplemental agreement as to relieve the bondholders from the payment of the cost of acquiring certain right of way by condemnation proceedings which by the original contract they were to pay before receiving the consideration for the bonds.

[Ed. Note.—For other cases, see Street Railroads, Cent. Dig. §§ 130, 131; Dec. Dig. § 52.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**2. COURTS (§ 354*)—FEDERAL COURTS—CONFORMITY TO STATE PRACTICE.**

The procedure prescribed by the Pennsylvania practice act of April 22, 1905 (P. L. 286), giving either party requesting binding instructions which have been refused or the point reserved the right to "move the court to have all the evidence taken upon the trial duly certified and filed so as to become a part of the record and for judgment non obstante veredicto upon the whole record," is adaptable to the federal courts and one which the conformity statute (Rev. St. § 914 [U. S. Comp. St. 1901, p. 684]) requires circuit courts within the state to follow.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 934; Dec. Dig. § 354.*

Conformity of practice in common-law actions to that of state court, see notes to O'Connell v. Reed, 5 C. C. A. 594; Nederland Life Ins. Co. v. Hall, 27 C. C. A. 392.]

In Error to the Circuit Court of the United States for the Eastern District of Pennsylvania.

Action by Thomas A. Jones and others, to the use of J. W. Van Dyke, against Edward B. Smith and others, trading as Edward B. Smith & Co. Judgment for plaintiffs, and defendants bring error. Reversed.

See, also, 158 Fed. 911.

H. C. Boyer and Wm. A. Glasgow, Jr., for plaintiffs in error.

Malcolm Lloyd, Jr., R. D. Brown, and C. H. Burr, for defendants in error.

Before GRAY, BUFFINGTON, and LANNING, Circuit Judges.

BUFFINGTON, Circuit Judge. In the court below Thomas A. Jones and others brought an action at law against Edward B. Smith & Co. to recover damages for failure to deliver bonds of a certain character. At the trial the court reserved a point of defendants, viz., "Under all the evidence in this case the jury should find for the defendants," and submitted the case to the jury. It found a verdict in favor of the plaintiffs for $47,739.83, and as part of such verdict:

"The jury did also answer the following questions: (1) Did Smith & Co. agree to modify the contract of January 25, 1906, in the manner referred to in the trustees' letter of February 9th? Answer: Yes. (2) Was the issue of $600,000 on February 8, 1907, a mere temporary expedient for the purpose of meeting pressing obligations? Answer: No."

Subsequently the court denied the motion of the defendant to enter judgment in its favor on such reserved question and entered such judgment for the plaintiffs. Thereupon defendants sued out this writ of error.

Under the issues formed, the proofs adduced, the finding of the jury that Smith & Co. modified "the contract of January 25, 1906, in the manner referred to in the trustees' letter of February 9th," and the statement of the plaintiffs' predecessor in title made in the letter of January 11, 1907, to Smith & Co., wherein he adopts the sale made by the bondholders committee, "as such sale is supplemented and interpreted by the letter of Messrs. Leigh & Ferebee, trustees, to Messrs.

Foster, Simcoe & Cobb, dated February 9, 1906," the case turns on the meaning and proper construction of such letter, which is:

"The undersigned trustees, acting under contract between yourselves and D. L. Groner and Tazewell Taylor, bearing date on the 25th day of January, 1906, beg to report that in compliance with the said contract, Edward B. Smith & Company, assignees of D. L. Groner and Tazewell Taylor, have paid to us the sum of fifty-nine thousand and four hundred ($59,400) dollars, that being 40 per cent. of the amount of the face value of the bonds placed by you in our hands, and we have, in compliance with the trust imposed in us, delivered to the said D. L. Groner and Tazewell Taylor the said bonds which were placed by you in our hands, and we hold now, subject to your orders, 40 per cent. of the face value of said bonds, to wit, fifty-nine thousand and four hundred ($59,400) dollars, less the sum of nine thousand ($9,000) dollars, that being 40 per cent. of the bonds belonging to the Consolidated Turnpike Company, and the further sum of eight thousand ($8,-000) dollars, which two sums are reserved by us as our indemnity against any loss which may be sustained by the purchasers of the bonds on account of condemnation of the Ocean View right of way, and the further sum of four hundred ($400) dollars, reserved for certain general expenses.

"Deducting these sums, amounting to seventeen thousand four hundred ($17,400) dollars, from the amount received by us, leaves in our hands, subject to your order, for distribution among the owners of said bonds, other than the Consolidated Turnpike Company, the sum of forty-two thousand ($42,000) dollars, or 33⅓ per cent. of the face value of all said bonds, except those owned by the Consolidated Turnpike Company.

"The cost, if any, of the said condemnation proceedings, will fall first upon the bonds of the Consolidated Turnpike Company, and we feel confident that the eight thousand dollars ($8,000.00) above reserved, for indemnity as aforesaid, or the greater part thereof, will ultimately be returned to us for distribution, through you, among the bondholders, from whose holdings the sum has been received.

"You will observe from the above that there can in no event be any further liability on account of condemnation proceedings than the reserved fund above stated, and only so much of that as may be necessary to meet the costs of such condemnation proceedings.

"We have a contract with the purchasers of said bonds, under which each bond owner may at his election accept the money for their holdings as above stated, or leave said money in bank, and exercise the right to take new bonds in a new company, should said purchasers hereafter acquire the Bay Shore Terminal Company, by purchase or reorganization."

The facts necessary to an understanding thereof are these: In September, 1905, Jones and the other defendants, being mortgage bondholders of the Bay Shore Terminal Company, an insolvent trolley road at Norfolk, Va., by writing, constituted F. S. Foster and others a bondholders committee, authorizing them:

"To sue, dispose of, exchange and contract concerning said bonds. * * * And we agree to accept the consideration received for said bonds * * * whether in cash or securities, provided only that such consideration shall be of equal benefit to all signers hereof without preference."

On January 25, 1906, E. B. Smith & Co., through their agents, Messrs. Groner & Taylor, made a contract with this committee, whereby, inter alia, they agreed to buy and the committee to sell not less than $135,000 in value of bonds held by the committee at 40 cents on the dollar, or at the option of the bondholders, instead of paying said sum for the bonds, to pay for them in bonds of a reorganized trolley company, dollar for dollar. It was also agreed that the bonds so sold by

the committee were to be free from certain right of way charges then in dispute, as follows:

"It is understood between the parties hereto that authority has been given to the present receivers to begin proceedings for the condemnation of such part of the right of way of the said company as is in dispute, and it is further understood that such proceedings are to be begun and concluded without cost to the parties of the second part hereto, and, in the event that the said parties of the second part hereto are called upon to pay anything on account of the said right of way, they shall be reimbursed proportionately by the bondholders herein represented."

By said contract Messrs. Leigh & Ferebee were constituted trustees to hold the purchase money and the bonds pending performance of the contract.

Now it is conceded that, if this contract has not been modified as to the requirement of removing the right of way liens, the plaintiffs have no right of action. We turn then to the question whether the contract is modified in that particular by the letter quoted above of February 9, 1906, which Messrs. Leigh & Ferebee, with the approval of E. B. Smith & Co., wrote to the bondholders committee. To us it is clear that the agreement which that letter evidences did not release the requirement in the contract of January 25, 1906, that the rights of way should be paid by the bondholders as a condition precedent to Smith & Co. settling for the bonds. A due appreciation of the facts and the situation of the parties clearly shows: First, what was the object in view in such letter; and, secondly, that it was not intended to waive the right of way requirement. After the contract was made on January 25, 1906, and the trustees on January 26, 1906, had receipted for the $10,000 earnest paid by Smith & Co. and the bonds, it was seen that the whole $59,400 of purchase money which Smith & Co. were to pay would be tied up pending the removal of the purchase-money liens. Now, as appears by the letter, Smith & Co. had paid the trustees $59,400, which was the purchase price of 40 per cent. for all the bonds delivered to the trustees. But it also appeared by the letter that Smith & Co. were willing that, if the trustees retain in their hands $17,400 to protect the right of way, they might pay any bondholders electing to take money, 33⅓ out of the 40 per cent., the agreed-on price. But this provision was clearly only intended to cover the case of those bondholders who elected to take money. As to those who wished to take bonds there was no call to change the contract. There was no money of theirs tied up in the hands of the trustees. It is true Smith & Co. had provided the money for all bonds; but if any bondholder did not elect to take money, but stood on his right to take bonds, then his getting such bonds had to await the clearance of the right of way liens. That this is the fair, reasonable, and just construction of this letter is to us clear. The letter itself shows that Smith & Co. were standing on their right to have the right of way liens removed. They received no consideration for any release of that right, and if the letter itself, without any action by the bondholders thereunder, is a release to any bondholder who did not choose to accept money under it, but stood on his option to take reorganization bonds, we would have the result that, if all the bondholders had elected to take reorganiza-

tion bonds, they all would get those bonds and escape any contribution whatever towards the extinguishment of the right of way liens. On the other hand, the reasonable construction is: That the money and the retention for the right of way extinguishment covered those bondholders who chose to take money, for, as the trustees say:

"We hold now, subject to your order, 40 per cent. of the face value of said bonds."

And that those bondholders who chose, not to take 40 per cent., in money, but reorganization bonds dollar for dollar, were relegated to their rights under the contract of January 25th by the closing provision of the letter which is:

"We have a contract with the purchasers of said bonds, under which each bondholder may at his election accept the money for their holdings as above stated, or leave said money in bank, and exercise the right to take new bonds in a new company, should said purchasers hereafter acquire the Bay Shore Terminal Company, by purchase or reorganization."

It follows, therefore, that the plaintiffs, not having elected to take money for their bonds, were in no way released from the provisions of the contract of January 25th, whereby the right to demand reorganization bonds was conditioned on the extinguishment of the right of way liens.

It is contended, however, that the court below was without power to enter a judgment in favor of the defendants non obstante veredicto in pursuance of the Pennsylvania practice act of April 22, 1905 (P. L. 286). In Fries-Breslin Co. v. Bergen, 176 Fed. 76, this court held that:

"Under the conformity provisions of section 914 of the Revised Statutes [U. S. Comp. St. 1901, p. 684], the Circuit Court was required to recognize the practice authorized by the said Pennsylvania act of 1905; there being nothing incongruous therein with the organization of the federal courts or their settled rules of procedure."

In view of the able argument made in the present case in support of an opposite view, we have re-examined the question but find no reason to differ from our former conclusion. The practice of entering judgments non obstante veredicto has long existed in Pennsylvania, and it enables the case to be concluded by a verdict, while the entry of judgment thereon is made dependent on the court's opinion on a reserved question of law. This permits the judge to give to the decisive law question on which a case turns a more careful examination than he can do in the stress of trial. Moreover, if an appellate court on review of such judgment finds error, it can reverse and direct entry of judgment for the other party and avoid a retrial. Long experience in this practice has convinced the bar and bench of the state of its value in conducing to a more careful and deliberate consideration of the law by the trial judge and to the avoidance of retrials. The practice in Pennsylvania is of statutory origin, as stated by Judge Acheson in Casey v. Pennsylvania Asphalt Co. (C. C.) 109 Fed. 746, adopted in 114 Fed. 189, 52 C. C. A. 145, and the principles involved in its application are set out in Fisher v. Sharadin, 186 Pa. 568, 40 Atl. 1091, and Boyle v. Mahanoy City, 187 Pa. 1, 40 Atl. 1093. Under the conformity act this

practice has long been followed in the federal courts in Pennsylvania and met with the approval of this court in Carstairs v. American Bonding & Trust Co., 116 Fed. 449, 54 C. C. A. 85. Subsequently the act of April 22, 1905 (P. L. 286), was passed, which provides:

"That whenever, upon trial of any issue, a point requesting binding instructions has been reserved or declined, the party presenting the point may, within the time prescribed for moving for a new trial, or within such other or further time as the court shall allow, move the court to have all the evidences taken upon the trial duly certified and filed so as to become part of the record, and for judgment non obstante veredicto upon the whole record; whereupon it shall be the duty of the court, if it does not grant a new trial, to so certify the evidence, and to enter such judgment as should have been entered upon that evidence, at the same time granting to the party against whom the decision is rendered an exception to the action of the court in that regard. From the judgment thus entered either party may appeal to the Supreme or superior court; as in other cases, which shall review the action of the court below, and enter such judgment as shall be warranted by the evidence taken in that court."

And its provisions have been adopted and followed in the practice in the United States courts in this state and approved, as we have seen, by this court in Fries-Breslin Co. v. Bergen, supra.

In the present case, the defendants, in accordance with the act, moved the court for binding instructions in their favor. This request was reserved by the court in terms:

"I reserve the first point of defendants asking for binding instructions in connection with the question whether there is any evidence to go to the jury in support of the plaintiff's claim."

Subsequently, on defendants' motion for judgment non obstante veredicto, the evidence was certified, and thereupon (Railroad Co. v. Hawthorne, 144 U. S. 202, 12 Sup. Ct. 591, 36 L. Ed. 405; German Ins. Co. v. Frederick, 58 Fed. 148, 7 C. C. A. 122; Village of Alexandria v. Stabler, 50 Fed. 689, 1 C. C. A. 616), it became the duty of the court to decide whether there was evidence to go to the jury. On this point the court below thought there was and entered judgment for the plaintiff on the verdict. In this, as we have shown in the foregoing part of this opinion, there was error. The case turned on the construction of the papers, and under our construction they disclosed no right of action in the plaintiffs. We, accordingly, reverse the action of the lower court and remand the case, with directions to enter judgment on the reserved point in favor of the defendants. That this practice results in but one trial and a final judgment on review is sound ground for the federal courts of this state conforming to the state's statutory practice. That this practice saves retrials and permits a final judgment when the case is reviewed shows its practical administrative worth. Interest rei publicæ ut sit finis litium. That the statute is of the kind to which the conformity act applies we are clear. Townsend v. Jemison, 48 U. S. 706, 12 L. Ed. 880; Sawin v. Kenny, 93 U. S. 289, 23 L. Ed. 926; Bond v. Dustin, 112 U. S. 607, 5 Sup. Ct. 296, 28 L. Ed. 835; Ft. Scott v. Eads, 117 Fed. 51, 54 C. C. A. 437.

The judgment of the court below is therefore reversed, and the case will be remanded, with directions to enter judgment non obstante veredicto in favor of the defendants.