### TROXELL v. DELAWARE, L. & W. R. CO.

(Circuit Court, E. D. Pennsylvania. August 6, 1910.)

No. 694.

1. COURTS (§§ 353, 354*)—FEDERAL COURTS—PRACTICE IN STATE COURTS—NEW TRIAL—MOTION FOR JUDGMENT NON OBSTANTE.

Pennsylvania Practice Act April 22, 1895 (P. L. 286), authorizing a motion for a new trial and for a judgment non obstante veredicto, is applicable to actions at law tried in the federal courts sitting in that state.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 933, 934; Dec. Dig. §§ 353, 354.*

Conformity of practice in common-law actions to that of state court, see notes to O'Connell v. Reed, 5 C. C. A. 594; Nederland Life Ins. Co. v. Hall, 27 C. C. A. 392.]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

2. COURTS (§ 299*)—JURISDICTION—INTERSTATE COMMERCE—PLEADING.

Where, in an action against an interstate carrier for death of a servant, the complaint alleged that defendant was engaged in transporting both freight and passengers, and of interstate and foreign commerce, such averment did not allege that defendant was engaged in the transportation of freight and passengers "in" interstate and foreign commerce, and must therefore be taken as an averment of the transportation of freight and passengers in both interstate and intrastate commerce.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 841; Dec. Dig. § 299.*]

3. MASTER AND SERVANT (§ 86*)—DEATH OF SERVANT—INTERSTATE EMPLOYÉS—EMPLOYER'S LIABILITY—EXCLUSIVENESS.

Where a fireman on a train carrying both interstate and intrastate commerce was killed, his widow was not limited to suit under the federal employer's liability act (Act April 22, 1908, c. 149, 35 Stat. 65 [U. S. Comp. St. Supp. 1909, p. 1171]), but was also entitled to sue under a state law not in conflict therewith.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 137; Dec. Dig. § 86.*]

4. MASTER AND SERVANT (§ 286*)—DEATH OF SERVANT—RAILROADS—NEGLIGENCE—QUESTION FOR JURY.

In an action for death of a railroad fireman in a collision between his train and certain cars which escaped from a grade siding, whether the railroad company was negligent in permitting the cars to escape, or in failing to provide a derailing switch, *held* for the jury.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 1020; Dec. Dig. § 286.*]

5. MASTER AND SERVANT (§ 217*)—DEATH OF SERVANT—ASSUMED RISK.

Where a railroad fireman had placed certain cars on a grade siding the day before he was killed by the escape of the cars in a collision between them and the train on which he was employed, and had knowledge that the switch was not provided with a derailing device, but he had not actual knowledge of the danger which existed by reason of defendant's failure to provide such derailing device, he did not assume the risk.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 588; Dec. Dig. § 217.*

Assumption of risk incident to employment, see note to Chesapeake & O. R. Co. v. Hennessey, 38 C. C. A. 314.]

6. WITNESSES (§ 37*)—COMPETENCY—KNOWLEDGE.

Where, in an action for death of plaintiff's husband, she testified that she had seen his check for his monthly pay, she was properly permitted to testify as to his earning capacity.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 80–87; Dec. Dig. § 37.*]

7. APPEAL AND ERROR (§ 1048*)—EVIDENCE—PREJUDICE.

Defendant was not prejudiced by the interrogation of a witness on a subject concerning which the witness testified he had no knowledge.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4140, 4158, 4159; Dec. Dig. § 1048.*]

8. EVIDENCE (§ 513*)—EXPERTS—SUBJECT OF EXPERT TESTIMONY.

Where a railroad fireman was killed in a collision between certain cars which escaped from a grade siding and the train he was operating, an experienced railroad engineer was properly permitted to testify that the siding should have been equipped with a derailing switch.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2317, 2318; Dec. Dig. § 513.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to. date, & Rep'r Indexes

At Law. Action by Lizzie M. Troxell against the Delaware, Lackawanna & Western Railroad Company. Verdict for plaintiff, and defendant moves for judgment non obstante, and for new trial. Denied.

George Demming, for plaintiff.

J. H. Oliver and James F. Campbell, for defendant.

HOLLAND, District Judge. This action is brought by Lizzie M. Troxell, a resident of the state of New Jersey, against the defendant, a corporation organized under the laws of the state of Pennsylvania; the plaintiff suing as the widow of Joseph D. Troxell, on behalf of herself and minor children, to recover damages for the alleged wrongful death of her husband, who was an employé of the defendant company. The case was tried in this court on April 4 and 5, 1910, and a verdict rendered by the jury in favor of the plaintiff for $7,698.28; whereupon a motion and 30 reasons for a new trial were filed, together with a motion for judgment non obstante veredicto. This latter motion will be first considered.

The defendant's right to move the court for the entry of such an order in its favor arises out of the Pennsylvania practice act of April 22, 1905 (P. L. 286), which is followed in the federal courts in this state. Fries-Breslin Co. v. Bergen et al. (C. C.) 168 Fed. 360, and 176 Fed. 76, 99 C. C. A. 384. The important part of this act provides:

"That whenever, upon the trial of any issue, a point requesting binding instruction has been reserved, the party presenting the point may, within the time prescribed for moving for a new trial, or within such other or further time as the court shall allow, move the court to have all the evidence taken upon the trial duly certified and filed so as to become a part of the record, and for judgment non obstante veredicto upon the whole record; whereupon it shall be the duty of the court, if it does not grant a new trial, to have certified the evidence, and to enter such judgment as should have been entered upon that evidence," etc.

At the trial the defendant submitted the following point for binding instructions:

"Under all the evidence your verdict should be for the defendant."

The court declined to so instruct the jury, and it is upon this action of the court that the motion for judgment non obstante veredicto is based.

The defendant's contention now is, upon this motion, that upon all the evidence in the cause it was the duty of the court, as a matter of law, to have instructed the jury to render a verdict in its favor, for the reasons:

1. That this action should have been brought by the personal representative of the decedent under the federal employer's liability act (Act April 22, 1908, c. 149, 35 Stat. 65 [U. S. Comp. St. Supp. 1909, p. 1171]), the remedy thereunder being exclusive.

The allegations in the statement of claim are that "the defendant, the Delaware, Lackawanna & Western Railroad Company, is a common carrier corporation, engaged in a business of transportation both of freight and passengers, and of interstate and foreign commerce, and is incorporated for this purpose under special acts of the Legislature

of the state of Pennsylvania." This is not an averment of an engagement in business of transportation of "freight and passengers" "in" interstate and foreign commerce; that is to say, the business of transportation only in "interstate and foreign commerce." The "business of transportation of freight and passengers" is not restricted to "interstate commerce" alone, but must be taken to be an averment of the transportation of "freight and passengers" in "intrastate commerce" as well.

It was proven at the trial that at the time of Joseph D. Troxell's death he was employed as a fireman on one of the defendant's locomotives, which was actually engaged in hauling over defendant's railroad some cars containing property in interstate commerce and others engaged in intrastate commerce. The suit is instituted by Lizzie M. Troxell, the wife of the decedent, "on behalf of herself and minor children," in accordance with the provision of the Pennsylvania act of April 15, 1851 (P. L. 674), authorizing the widow of a person whose death shall have been occasioned by an unlawful violence or negligence to "maintain an action for the recovery of damages for the death thus occasioned." The federal employer's liability act of April 22, 1908, on this point provides:

"That every common carrier, etc., shall be liable in damages to any person suffering injury, * * * or in case of death of such employé, to his or her personal representative, for the benefit of the surviving widow of decedent and children of such employé."

If the federal act, as urged by the defendant, be exclusive of all state legislation upon this subject, and the remedy provided thereunder also exclusive, then it would have been necessary to institute suit in the name of the "personal representative" of decedent for the benefit of the surviving widow and children of "such employé," which was not done in this case. The question is not at all free from doubt. The act has been before the federal and state courts a number of times, and it has been held by the federal courts that the act of April 22, 1908, supersedes all state statutes regarding the relations of railroad employers and employés "engaged in interstate commerce."

There are five cases, to which the court's attention has been called, in which the effect of the federal act on state and territorial legislation has been considered. The first is the case of Fulgham v. Midland Valley R. Co. (C. C.) 167 Fed. 660. In that case there was no diverse citizenship, and it could not be brought in the federal courts except under the employer's liability act; in fact, it was admitted that the suit was brought under this act. The defendant was engaged in interstate commerce, and the suit was instituted by the "personal representative" of the decedent. In the statement of claim the plaintiff endeavored to recover for two elements of damage based upon the state act. In other words, the suit was instituted under the provisions of the federal act, and an attempt was made to recover under the state act. Under the state act there was an element of damage to which the plaintiff was entitled which could not be recovered under the federal act. They were in conflict, and it was held in that case that the recovery could not be had, and it was put upon the

ground that the federal act superseded "all state statutes relating to the relation of railroad employers and employés engaged in interstate commerce." This case, however, is not an authority on the question as to whether or not a suit instituted under the state law, which is not in conflict with the federal law, can be maintained for a recovery under a state law for the death of an employé, against the defendant, who at the time of the employé's death was also engaged in intrastate commerce.

In the case of Whittaker v. Illinois Central Railroad Co. (C. C.) 176 Fed. 130, it was a question as to the district in which the suit could properly be instituted, the consideration of which involved the question as to whether or not the federal act superseded state laws on the same subject. Suit had been instituted under the federal act, and the statement alleged that the defendant was engaged in interstate commerce.

In Dewberry v. Southern Railway Company (C. C.) 175 Fed. 307, the suit was instituted under the state act, and, on demurrer, the court held that the federal employer's liability act, making railroads engaged in interstate commerce liable for injury or killing employés while similarly engaged, is plenary, and superseded all laws of the state relating thereto. This case is almost identical on the facts with the one at bar, with the exception that it does not disclose whether or not the defendant was engaged in intrastate commerce at the time, nor whether the state act was in any particular in conflict with the federal act.

The other two cases, to wit, Cound v. Atchison, etc., Railway Company (C. C.) 173 Fed. 527, and Southern Pacific Co. v. McGinnis, 174 Fed. 649, 98 C. C. A. 403, raise the question as to whether or not the act of April 22, 1908, superseded all laws in the territory, which is entirely a different question from the one involved in the suit at bar. El Paso, etc., Ry. v. Gutierrez, 215 U. S. 87, 30 Sup. Ct. 21, 54 L. Ed. ——.

As to the territories, "Congress may not only abrogate laws of Territorial Legislature, but it may itself legislate directly for the local government. It may make a void act of the Territorial Legislature valid, and a valid act void. In other words, it has full and complete legislative authority over the people of the territory and all departments of the territorial government. It may do for the territories what the people, under the Constitution of the United States, may do for the states." National Bank v. County of Yankton, 101 U. S. 133, 25 L. Ed. 1046; Mormon Church v. U. S., 136 U. S. 42, 10 Sup. Ct. 792, 34 L. Ed. 478.

In neither of these cases was the question considered as to whether or not a recovery could be had under the provisions of a state law to recover damages for negligence of a common carrier engaged in both intrastate and interstate commerce at the time the alleged damage was inflicted. There is no doubt but that if this federal act is to be maintained, it must be upon the ground that it relates solely to employés engaged in interstate commerce, and the states must be permitted to deal with the questions between the employer and em-

ployé in matters wholly within the state. A more complicated situation will arise, as it did in this case, where the carrier is engaged in both intrastate and interstate commerce, and that the work upon which the employé is engaged when injured is both the work of intra and inter state commerce. We are inclined to the view that, in a situation like the one at bar, where the carrier is engaged in both intra and inter state commerce, and negligently causes the death of an employé in similar employment, that the personal representative of the decedent may institute a suit under the federal act, or action may be brought under a state act which is not in conflict with the federal act. The decision of the United States Supreme Court in the Employer's Liability Case, in declaring the act of June 11, 1906, unconstitutional, would indicate this view of the question. It is there said:

"One engaged in interstate commerce does not thereby submit all its business to the regulating power of Congress." 207 U. S. 463, 28 Sup. Ct. 141, 52 L. Ed. 297.

The following decisions of state courts will be interesting in connection with this question: Frank J. Luken v. Lake Shore & Michigan Southern Railway Company, decided March 1, 1910, by the Appellate Court of the state of Illinois, First district (not yet reported); Detroit, Toledo & Ironton Railway Company v. State of Ohio, decided March 15, 1910, by the Supreme Court of the state of Ohio (not yet officially reported) 91 N. E. 869; State of New York, Appellant, v. Erie Railroad Company, Respondent, decided April 26, 1910, by the Court of Appeals of the state of New York (not yet officially reported) 91 N. E. 849; William H. Hoxie v. New York, etc., Railroad Company, decided by the Supreme Court of Errors of Connecticut (not yet officially reported) 73 Atl. 754.

2. The approximate cause of the accident was the tampering with the brakes and blocks. It appeared from the evidence that the decedent was a fireman employed by the defendant company, and engaged on the 21st day of July, 1909, in that capacity in hauling a train on the main line towards Penn Argyl, when his engine was struck by six loaded ash cars, which, for some unexplained reason, had run away from the siding upon which they had been placed at Penn Argyl Branch, known as "Albion No. 2." This siding runs off the Penn Argyl Branch about 500 feet from the main line of the Bangor, Portland Division of the defendant railroad. The first 100 feet of the siding is on a level, and from there back for 700 or 800 feet there is a gradual grade averaging 1 per cent. There is a downgrade for upward of four miles from this siding to and down the main line. These cars had been placed upon this siding beyond the level portion thereof, on the grade, which, as has been said, was an average of about 1 per cent. There was evidence, which was uncontradicted on the part of the defendant, that these cars when placed upon the siding were braked, and that the brake on the first car was double—that is, two men turned it as hard and as strong as possible; and, further, there was evidence on the part of the defendant that blocks were placed under the wheels of the first two cars. Notwithstanding the testi-

mony of defendant's witnesses on this point, it is a fact in the case that these cars ran away from this siding out upon the main track and collided with the decedent's engine four miles below. The track was all downgrade from the point from which the cars started to the point of collision. There was no derailing device used by the defendant company at the switch upon which the cars had been placed.

The defendant contended that from the evidence submitted by it of the manner of braking and blocking the cars, the inference must be drawn that it was impossible for them to run away except by the interference of outside parties, and then to further infer that outside parties actually did interfere and loose the brakes and blocks, which started the cars from the switch; that this tampering with the brakes was the approximate cause, and the defendant is not liable.

The defendant's evidence as to the braking and blocking of cars may be said to be conclusive that they could not have run away except as a result of some person loosening the brakes and removing the blocks, but there is nothing to show whether or not that was done by the railway employés, in the usual course of handling these cars, subsequent to their having been braked and blocked, or that it was outside parties, with the criminal purpose of permitting them to run out from the switch. There is no evidence on this point at all. Had the defendant been able to show that the cars started by reason of a criminal interference with the brakes and blocks by outside parties, it would have been in a more favorable position.

The contention of the plaintiff is that by establishing the fact that these cars did run away and collide with the decedent's engine four miles below the point from which they started, and the fact that the tracks of the siding, branch line, and main line were all downgrade from the point where the cars started to the point where the collision occurred, together with the evidence of an experienced railroad engineer, who testified that under these circumstances there should have been a derailing device at the Albion siding, she has affirmatively established the negligence of the defendant, and that the jury would be warranted in drawing such a conclusion.

The defense endeavors to avoid the charge of negligence by proving the manner of braking and blocking the cars upon the siding, and urges that a conclusion must be drawn from this evidence that the cars could not have escaped except as a result of outside interference, and insists that such a conclusion is warranted and must be drawn by the court as a matter of law. The evidence relied upon does not justify a finding that "outside parties tampered with the brakes and blocks." The evidence of the defendant on this point, however, is a matter of defense to be submitted to the jury on the question of negligence. This evidence on the one side and on the other raise the question of the defendant's negligence, a question of fact which was submitted to the jury under proper instructions.

3. The decedent assumed the risk of defendant's negligence. It is contended that the decedent had placed these cars on that switch the day before, and that he knew there was no derailing device on this switch, and he, therefore, assumed all the risk of the dangerous surroundings, and assumed the risk of the defendant's negligence. We

do not think this contention can be maintained, but we think the better rule is that laid down by the Supreme Court of the United States in the case of Texas & Pacific Railway Co. v. Swearingen, 196 U. S. 51, 25 Sup. Ct. 164, 49 L. Ed. 382. In this case the court said:

"Knowledge of the increased hazard resulting from the dangerous proximity of the scale box to the north rail of track No. 2 could not be imputed to the plaintiff simply because he was aware of the existence and general location of the scale box. * * * It was for the jury to determine from all the evidence whether he had actual knowledge of the danger."

There is nothing in this case to show that the decedent had actual knowledge of the danger which existed by reason of the failure of the defendant to have a derailing device at this switch. He may have known that there was no derailing device placed upon the switch, but there is nothing to show that he knew of such a combination of dangerous conditions as existed at this point. The motion for judgment non obstante veredicto is therefore refused.

There are 30 reasons assigned for a new trial, 4 of which are based upon the admission of evidence on the part of the plaintiff against the objection of the defendant; 15 allege erroneous answers to points submitted by the defendant; and 6 are to alleged errors in the charge of the court. The twenty-seventh reason assigned is that the verdict is excessive; the twenty-eighth, the verdict was against the law; the twenty-ninth, the verdict was against the evidence; and the thirtieth, the verdict was against the charge of the court.

The first reason assigned for a new trial is that the court erred in permitting the plaintiff to testify to the earning capacity of her husband. She said she had seen his checks for his monthly pay, and upon that she was properly permitted to testify.

The second error is as to the plaintiff's offer to prove that blasts causing shaking and reverberations of the earth would account for the escape of the cars from the siding. The plaintiff was permitted to ask as to this condition at that point, against the objection of the defendant, but the witness knew nothing about it, so that the defendant was not injured.

In the third and fourth, the question as to whether the plaintiff's evidence of an experienced railroad engineer, to the effect that this switch was defectively equipped in not having a derailing device, was properly admissible, is raised. The witness testified that under the circumstances there should have been a derailing device placed at this switch, and we think it was proper matter to submit to the jury, and the witness was entirely competent to speak upon that question.

We do not think it necessary to take up seriatim the errors assigned to the answers of the court to the points submitted by the defendant, nor to those errors assigned to the charge of the court. A review of both the charge to the jury and the answers to the 32 different points submitted by the defendant does not, in our judgment, when read in connection with the facts in the case, show that the court committed any error.

The question of the defendant's negligence under all the circumstances was a question of fact, and it was properly submitted to the jury for their consideration, together with the question of the amount of

damages which the plaintiff sustained. The jury found the defendant liable, and rendered a verdict which we think is justified by the evidence as to the earning capacity of the decedent and the amount of damages suffered by the plaintiff.

The motion for a new trial is therefore overruled.