Houston & Texas Central Railway Company v. State of Texas.

Decided February 24, 1900.

**1.  Practice on Appeal—Wrong Reason Given for Judgment Below.**

The appellate court will not reverse a correct judgment of the trial court merely because the reason given by the judge in rendering it is erroneous.

**2.  Same—Judgment Reversed on One Ground Is Not Conclusive as to Another Ground.**

Where a land grant from the State was assailed on the grounds that the certificates by virtue of which the land was located were void, and that the locations were made within a reservation, and the Texas courts held that the certificates were void, and their judgment was reversed by the Supreme Court of the United States, which declined, however, to consider the question of the validity of the location, this did not preclude the Texas courts, on another trial, from deciding the grant void because of the illegal character of the location.

**3.  Legislative Act—Title—Constitutional Law.**

The Act of May 2, 1873, entitled "An act to adjust and define the rights of the Texas & Pacific Railway Company in order to encourage the speedy construction of a railway through the State," is not repugnant to the clause in the Constitution requiring that every legislative act shall embrace but one subject matter which shall be expressed in its title, because, in aid of such road, the act made a reservation of land along its proposed line. Const., 1869, art. 12, sec. 17.

**4. Same—Texas & Pacific Railway Land Grant Reservation.**

Nor is said act, because of the reservation of land made therein for the benefit of the railway company, in conflict with the section of the Constitution prohibiting the granting to railway companies of more than twenty sections of land for each mile of completed road, since a reservation is not a grant.

**5. Land Grant to Railway Company—Filing Land Certificates for Location.**

For a filing by the Houston & Texas Central Railway Company on land falling within the Texas & Pacific Railroad reservation, made before the reservation was established, and held to be valid and to confer the superior title, the lands having been surveyed within one year thereafter, see the opinion, citing Paschal's Digest, articles 4556, 4567, 4568, 4573, 4946, 4950.

Appeal from Nolan. Tried below before Hon. William Kennedy.

*T. D. Cobbs* and *Baker, Botts, Baker & Lovett,* for appellant.

*T. S. Smith,* Attorney-General, and *R. H. Ward,* Assistant Attorney-General, for the State.

Stephens, Associate Justice.—This suit was brought in the name of the State of Texas to recover of appellants sixteen sections of land, situated in Nolan County, and within the Texas & Pacific reservation, which was created by special act of the Legislature passed May 2, 1873, entitled "An act to adjust and define the rights of the Texas & Pacific Railway Company within the State of Texas, in order to encourage the speedy construction of a railway through the State to the Pacific Ocean." 2 Sayles' Civ. Stat. Append., p. 1939. Recovery was sought mainly upon the ground that the certificates by virtue of which the lands had been located were void, but also upon the ground that the lands were within the Texas & Pacific reservation when located for appellant railway company, and hence not subject to such location. The case was tried without a jury, and, upon conclusions of law and fact filed by the district judge, judgment was rendered in favor of the State. Among the findings of fact was one to the effect that the lands in controversy were located and surveyed within said reservation after the special act creating it went into effect, but, as the court held the certificates themselves to be void, no conclusion of law was expressed as to the validity of the locations. On appeal to this court the judgment of the District Court was affirmed, solely upon the ground that the certificates were void, and, on application to our Supreme Court, writ of error was denied solely upon the same ground. The Supreme Court of the United States, however, upon writ of error granted from that court, held the certificates to be valid, thus overruling the State courts, and remanded the cause to this court "for further proceedings not inconsistent with the opinion" of that court, but declined to consider the question involving the invalidity of the locations. 170 U. S., 245. Upon the mandate being filed in this court, appellants submitted a motion to have judgment entered in their favor for the land, without reference to the merits of the second ground of recovery relied on by

the State (the invalidity of the locations) ; citing, in support of the motion, Stanley v. Schwalby, 162 United States, 255. We can not, however, accept the construction placed by counsel for appellants upon this decision. Evidently the court did not intend in that case to hold that an appellate court must reverse a correct judgment of the trial court merely because the reason given by the judge in rendering it is found on appeal to be erroneous. When the pleadings and findings of fact, supported by the evidence, sustain the judgment, it should be allowed to stand, be the reason given for rendering it ever so erroneous; for the judgment is but the sentence of the law pronounced upon the facts found in the record. Such, at least, is the universal practice in the courts of this State, and we find nothing at variance with it in Federal procedure, where the Supreme Court of the United States takes jurisdiction, as in this case, because a Federal question was involved. We are therefore of opinion that we should now dispose of the appeal on its merits, and proceed to do so by considering the second ground of recovery, since such proceeding is "not inconsistent with the opinion" to which we are referred by the mandate.

Appellants concede that, of the sixteen sections recovered, the State was entitled to surveys 169 and 191, unless the law creating the Texas & Pacific reservation was unconstitutional; it being undisputed that no application was made, by virtue of the certificates under which these two surveys are claimed, to locate the same, till after the act creating the reservation took effect. It is, however, contended that this act was repugnant to that clause of the Constitution of 1869, then in force, which required that every law enacted by the Legislature should embrace but one object, and that it should be expressed in the title of the act. It is further contended that in creating the reservation for the benefit of the Texas & Pacific Railway Company before the construction of its railway the act was in contravention of that section of the Constitution of 1869, which, as amended in March, 1873, prohibited the Legislature from granting to railroads "more than twenty sections of land for each mile of completed work," the two words last quoted being italicized by appellants.

Inasmuch as the law thus assailed has not only stood unchallenged for more than a quarter of a century, but, being one of great public importance, has during that long period been treated as valid both by the courts and the public officers of this State, we will dispose of these constitutional objections in a few words. As to the first, reading the caption of the act in the light of the then current railroad history of Texas, we fail to see how any one at all familiar with public affairs could have been misled by the title. "To adjust and define the rights of the Texas & Pacific Railway Company within the State of Texas, in order to encourage the speedy construction of a railway through the State to the Pacific Ocean," was the one great and clearly-expressed object of the act, and in order to accomplish this object the Legislature, among other provisions, reserved from location for about seven years the body

of land described in the act along the projected line of railway through the western part of the State, which reservation was merely subsidiary to the main purpose of the act.

The second objection may be disposed of in a similar manner. While the Constitution prohibited land grants to railroad companies, except for "completed work," the purpose of allowing such grants to be made at all was to encourage the building of railroads in Texas, and the reservation from general location of a reasonable quantity of the public domain for a reasonable length of time was but preliminary and subsidiary to the granting of lands for "completed work," and not itself, as contended by appellants, a land grant made for work not completed. It was a mere temporary reservation of land from location, and not a land grant at all. It follows from these conclusions that as to surveys 169 and 191 the judgment should be affirmed.

We next consider the effect of a file made for appellant railway company July 28, 1872, before the passage of the act in question, which file was as follows:

"State of Texas, County of Bexar. To the Surveyor of Bexar District: By virtue of forty certificates issued to the Houston & Texas Central Railway Company by the Commissioner of the General Land Office on the first day of July, 1872, numbered from 40-4997 to 40-5036, inclusive, I hereby file upon the following vacant land in your land district, to wit: On the waters of the Colorado and Clear Fork of the Brazos, in Taylor County, beginning at the S. E. corner of John Trussell's ½ league, near the Clear Fork of the Brazos and on the line of Travis district; thence west to Trussell's S. W. corner; thence northerly, with his line, passing N. W. corner, and continuing to the Clear Fork; thence, with the Clear Fork and the line of Young district, to the W. line of the county; thence south to or opposite to the M. C. Lunicki sur.; thence eastward, to and with Lunicki, to or Martinez', C. Colenck's, Ed. Taylor's, and James Jeffries' E lines, to Davis Harrison; thence northeast and northwest, with the lines of Harrison, E. Isias, N. Gwatney, Thos. Linsey, W. F. Smith, T. Berwer, and W. S. Henry, to the N. E. corner of said Henry's league; thence S. E. and S. W., with Henry, James Walker, Thos. Linsey, and Elisch Isias, to the L. Forsyth league, and with its N. and N. E. line to the line of the county; thence E., with county line of Taylor and Runnels, to the John Forbes survey; thence north, with Forbes, C. M. Jackson, W. F. S. Parks, Robt. Triplett, and John Kincaide, to N. E. corner of the latter; thence east, with Kincaide and Triplett, to Smith league, and with its W. and N. lines to the N. E. corner on the line between Bexar and Travis District; thence N. W., with said line, to the beginning.

"ROBT. M. ELGIN, Land Agent H. & T. C. Railway.

"All valid subsisting entries and surveys are hereby excluded from the above, as well as the rocky summits of mountains in vicinity of mountains pass. Robt. M. Elgin, Land Agt.

"Came to hand and filed in my office at 11 o'clock a. m., this 28th day of July, 1872, in File Book No. 4, page 131.

"C. Harnett, D. L. B. D., by L. C. Navarro, Deputy."

It appears from the record that the lands so applied for were surveyed (June 1 and 7, 1873) within twelve months from the date of this file, and that the field notes were returned to and filed in the General Land Office (November 20, 1873) within twelve months from the dates of the surveys.

On the original hearing of the appeal this court was inclined to doubt the sufficiency of this file, but now, considering it in the light of the statutes then in force and the decisions construing them, to which counsel for appellants have cited us, we have concluded that probably as to some, if not all, of the remaining fourteen sections this file was valid, and, being prior, was also superior to the reservation made by the Act of May 2, 1873. Pasch. Dig., arts. 4566, 4568, 4573, 4946, 4950; Wyllie v. Wynne, 26 Texas, 42, and several other cases in line with it.

The only authority cited in opposition to appellants' contention on this point is the case of Cattle Company v. Bacon, 79 Texas, 5, which, when carefully examined, will be found not to conflict with the line of decisions cited by appellants. We conclude, therefore, that the judgment for the fourteen sections located prior to the creation of the Texas & Pacific reservation, as the record now presents the case, can not stand, and it may be that as to them we would be warranted in here rendering judgment in appellant's favor; but we have concluded that a better disposition of the appeal would be to remand the cause for a new trial as to these fourteen sections, mainly for the following reasons: When the Texas & Pacific reservation was created it absorbed the pre-existing Memphis, El Paso & Pacific reservation, or rather extended it from sixteen to eighty miles in width in that portion of the State where the lands in controversy are situated. It may be, for aught that is shown by this record, that these lands, or at least a portion thereof, are situated within that part of the Texas & Pacific reservation which was reserved from location, at the date of appellant railway company's original file, as the Memphis, El Paso & Pacific reservation. True, the only reply made in the pleadings of the State to the file of July 28, 1872, was that this file had been abandoned; but the case was decided upon another issue, and we are inclined to the opinion that, when the case is fully developed in the pleadings and proof, it will be found that appellants are not entitled to all, if to any, of the fourteen sections. We would not reverse a judgment to enable a party to plead and prove a new issue, but in reversing judgments we have in several instances declined to exercise our power to proceed to render judgment, where it seemed probable that the ends of justice would be better subserved by remanding the cause for a new trial. Therefore, as to surveys 169 and 191, the judgment is affirmed, but as to the remaining sections it is reversed, and the cause remanded for a new trial.

*Reversed and remanded.*

Writ of error refused.