### FREEMAN v. POWELL.

(Court of Civil Appeals of Texas. Ft. Worth. Dec. 23, 1911. Rehearing Denied Feb. 3, 1912.)

1. COMMERCE (§ 27*)—INTERSTATE COMMERCE —EMPLOYER'S LIABILITY.

An employé of an intrastate railroad company, engaged in preparing ice for use in passenger cars carrying interstate passengers, was engaged in interstate commerce; and hence the company's liability to him for personal injuries received in the work is governed by Act Cong. April 22, 1908, c. 149, § 4, 35 Stat. 66 (U. S. Comp. St. Supp. 1909, p. 1173), under which assumption of risk is available, unless the injury was caused by the employer's violation of a statute enacted for the safety of employés, and not by Acts 29th Leg. c. 163, § 1, which precludes the defense of assumption of risk in certain cases.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. § 25; Dec. Dig. § 27.*]

2. COMMERCE (§ 5*) — INTERSTATE COMMERCE —CONGRESSIONAL POWER.

The power of Congress over interstate commerce extends to all agencies and instrumentalities through which it is carried on.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. §§ 3, 5; Dec. Dig. § 5.*]

Appeal from District Court, Tarrant County; W. T. Simmons, Judge.

Action by J. R. Powell against Thos. J. Freeman, receiver. Judgment for plaintiff, and defendant appeals. Reversed and rendered.

George Thompson and Spoonts, Thompson & Barwise, for appellant. Smith, Turner & Bradley, for appellee.

CONNER, C. J. Appellee instituted this suit in the district court of Tarrant county against Thos. J. Freeman, as the receiver of the International & Great Northern Railroad Company, to recover damages for injuries alleged to have been received by him on the 5th day of November, 1909.

He alleged that while in the employ of said receiver in the city of Ft. Worth he was attempting to lift a block of ice, weighing about 100 pounds, from an ice box, for the purpose of carrying the same to passenger cars, and that while engaged in the effort he slipped and was injured by a falling block of ice. The negligence alleged was the failure on the part of the receiver to furnish ice hooks, or some other device, with which to handle the ice, because of which he was required to lift the block of ice in question with his hands. Appellant answered by general denial, pleas of contributory negligence and assumed risk, and especially that at the time of the injury the defendant was engaged in interstate commerce and in the actual performance of work connected with the moving of interstate commerce, and the laws of the United States of America, relating to the liability of the parties, were pleaded and relied upon. There was a trial before the court without a jury, which resulted in a judgment in favor of the plaintiff on November 25, 1910, for the sum of $1,500, from which judgment an appeal has been duly perfected.

There is no substantial conflict in the evidence. The plaintiff below testified that he had been working at the roundhouse of the receiver for about 12 months prior to the accident; it being a part of his duty to go to the roundhouse, get ice out of the box furnished for that purpose, place it on a table, and saw it into 4 pieces, put the pieces in a wheelbarrow, convey them to passenger coaches, and put them in the water coolers. The table was some 3 to 5 feet from the ice box, and, in order to get the ice therefrom, it was necessary for appellee to go up to the box, bend over, and get his hand under the bottom of the 100-pound block, and raise it to the top of the box. Appellee testified that this was a difficult operation; that no ice hooks or other instrument had been furnished him with which to lift the ice; that on the day of the accident he reached to the bottom of the box, and in the manner stated pulled a block to the top and in making an extra effort to pull it out he became overbalanced and fell back, and that as he did so the ice slipped off the edge of the box on his side and injured him. He further testified that from the beginning of his employment he worked continuously, and took ice out of the box nearly every day up to the time he was hurt; that for the first six months of the time he had ice hooks, but did not know what became of them; that they got misplaced somewhere; that the last 6 months he worked without hooks; that he was able to lift the ice out of the box and put it on the table by himself; that he

would take out one block at a time. He further testified: "I knew that required more effort than with ice hooks, and it was a more dangerous method to take it out, and I knew that. * * * In other words, with the ice hooks, when I got it up, I could hold it steadier than I could with my hands. * * * I knew if I lifted the 100 pounds of ice and pulled it up with my hands to bring it over on the edge of the box, and lifted it on the table, that if the ice slipped it was liable to let me fall." He further testified that he made a request of his foreman, one Lauder, for ice hooks about 3 or 4 months before the accident, and that Lauder told him to "go ahead and handle it. If you can't do it, others can." There was other testimony to the effect that the foreman, Lauder, knew that there were no ice hooks immediately available, and that sometimes the ice was divided in the box and taken out in 25-pound sections.

The testimony further shows that the city of Ft. Worth, where appellee was employed, was a terminal point of the International & Great Northern Railroad, and that its line ran from Ft. Worth to San Antonio and on to Laredo and Galveston, and that the company was engaged at the time of the accident in hauling passengers delivered to it by connecting lines in Ft. Worth. It was agreed between the parties that on the morning of appellee's injury the passenger train, to serve which appellee was engaged, left Ft. Worth about 7:30 a. m., making various connections, and that that train carried two interstate passengers, one traveling on a ticket sold at Granite, Okl., a station on the Chicago, Rock Island & Texas Railway Company's line, and coming from Granite to Ft. Worth over that line, and from thence to San Antonio, Tex., over the line of the International & Great Northern Railway; that another, with a ticket from Chicago, sold by the Chicago & Alton Railway Company at Chicago, to Laredo, Tex., came to Ft. Worth over the line of the C. & A. and other connecting lines, and went out of Ft. Worth on the morning in question on the ticket so purchased and on the train in question.

The court found, among other things, that the plaintiff's injuries were the proximate result of the defendant's negligence in not furnishing plaintiff with ice hooks with which to handle the ice, and that plaintiff was not guilty of contributory negligence, and that he did not assume the risk arising from the failure to furnish ice hooks.

[1, 2] We think it is unnecessary to determine whether appellant's failure to furnish ice hooks was the proximate cause of appellee's injury, inasmuch as we have concluded that the court erred in finding that appellee did not assume the risk of the danger of which he complains. In the absence of a statute affecting the rule, we think it is not to be doubted from the unquestioned facts that appellee did assume the risk. See

Mt. Marion Coal Mining Co. v. Holt, 54 Tex. Civ. App. 411, 118 S. W. 825; Choctaw, O. & G. R. Co. v. McDade, 191 U. S. 64, 24 Sup. Ct. 24, 48 L. Ed. 100. But it is insisted that the court's conclusion to the contrary is correct, because of the act of the Legislature of the state of Texas, approved April 24, 1905. Section 1 of that act reads: "That in any suit against a person, corporation or receiver operating a railroad or street railway for damages for the death or personal injury of any employé or servant, caused by the wrong or negligence of such person, corporation or receiver, that the plea of assumed risk of the deceased or injured employé where the ground of the plea is knowledge or means of knowledge of the defect and danger which caused the injury or death shall not be available in the following cases: First. Where such employé had an opportunity before being injured or killed to inform the employer or a superior intrusted by the employer with the authority to remedy or cause to be remedied the defect, and does notify or cause to be notified the employer or superior thereof within a reasonable time, provided it shall not be necessary to give such information where the employer or such superior thereof already knows of the defect. Second. Where a person of ordinary care would have continued in the service with the knowledge of the defect and danger and in such case it shall not be necessary that the servant or employé give notice of the defect as provided in subdivision 1 hereof." See General Laws 1905, p. 386.

If the above act applies, the court's findings have some support in the evidence; but we are of the opinion that the rights of the parties are to be determined by the provisions of the act of April 22, 1908, passed by the Congress of the United States. Section 1 of the act of Congress declares, among other things not pertinent to the present inquiry, that every common carrier by railroad, while engaged in commerce between any of the several states, shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce; and it is particularly provided, in section 4, that: "In any action brought against any common carrier under or by virtue of any of the provisions of this act to recover damages for injuries to, or the death of, any of its employés, such employé shall not be held to have assumed the risks of his employment in any case where the violation by such common carrier of any statute enacted for the safety of employés contributed to the injury or death of such employé." See Fed. St. Ann. Supp. 1909, p. 585.

It thus appears that under the federal statute a complaining employé to whom the act applies is not relieved from the operation of the ordinary rule of assumed risk, except in cases where there is a violation by the carrier of some statute enacted for the safety of an employé which has contributed to his injury

or death, and of this there is no contention in this suit. In the respect just noted, the act of Congress conflicts with the state's statute which we have quoted. The power of Congress over interstate commerce is not an open question, and it extends to all agencies and instrumentalities by or through which it is carried on. See Interstate Commerce Commission v. Illinois Central Ry. Co., 215 U. S. 452, 30 Sup. Ct. 155, 54 L. Ed. 280; Gloucester Ferry Co. v. Commonwealth of Pennsylvania, 114 U. S. 196, 5 Sup. Ct. 826, 29 L. Ed. 158; Moore v. U. S., 91 U. S. 270, 23 L. Ed. 347; Miller & Co. v. Goodman, 91 Tex. 43, 40 S. W. 718; Houston Direct Nav. Co. v. Ins. Co. of N. A., 89 Tex. 1, 32 S. W. 889, 30 L. R. A. 713, 59 Am. St. Rep. 17; State v. Gulf, C. & S. F. Ry. Co., 44 S. W. 542. Appellee's employment had direct relation to the commerce, to wit, the two interstate passengers which the train in question transported. The service performed directly contributed to the comfort and necessity, not only of the local, but of the interstate, passengers; and we therefore think his employment comes well within the authorities on the subject that we have been able to find. See cases hereinbefore cited and Daniel Ball v. U. S., 10 Wall. 557, 19 L. Ed. 999; Zikos v. Oregon, R. & Nav. Co. (C. C.) 179 Fed. 893; Colasurdo v. Cen. R. R. of New Jersey (C. C.) 180 Fed. 832; Troxell v. Delaware, L. & W. R. Co. (C. C.) 180 Fed. 871. Indeed, it is not contended in behalf of appellee that he was not employed in interstate commerce. His contention is that there is no conflict between the state statute and the act of Congress; but in this contention we cannot concur. It seems to us that the authorities hereinbefore cited are conclusive to the effect that the subject of interstate commerce has been committed to the national lawmaking power, and that when this power has been exercised it is supreme, and excludes any state legislation on the subject. As we have seen from the act of Congress quoted, Congress has undertaken to define the relative rights and liabilities of railway companies and their employés engaged in interstate commerce, and we do not think we have power to add to the act of Congress by ingrafting thereon an exception to the consequences that must ordinarily flow from appellee's undisputed knowledge of the defect and negligence complained of in this suit.

It follows that the judgment below must be reversed and here rendered for appellant, and it is so ordered.