FT. WORTH & D. C. RY. CO. v. COPELAND.

(Court of Civil Appeals of Texas. Ft. Worth. Dec. 20, 1913. On Motion for Rehearing, Jan. 24, 1914. Further Rehearing Denied Feb. 28, 1914.)

1. MASTER AND SERVANT (§ 217*)—INJURIES TO SERVANT—ASSUMPTION OF RISK.

An experienced switchman thoroughly familiar with the work at which he was engaged, and with the customary methods of doing the work, assumes the risk of injuries resulting from the ordinary and customary switching of cars.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 574–600; Dec. Dig. § 217.*]

2. MASTER AND SERVANT (§ 204*)—INJURIES TO SERVANT—ASSUMPTION OF RISK—FEDERAL STATUTE.

The federal Employers' Liability Act does not abolish the defense of assumption of risk.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 544–546; Dec. Dig. § 204.*]

On Motion for Rehearing.

3. APPEAL AND ERROR (§ 1178*)—DETERMINATION—REMAND.

Under Rev. St. 1911, art. 1626, providing that, when the judgment of the court below shall be reversed, the court shall render such judgment as the court below should have rendered, except when it is necessary that some matter of fact be ascertained, a judgment for plaintiff will not be reversed without remand, where plaintiff, by amending his pleadings, might possibly state and prove a good cause of action, this being so, even though the case stated in the pleadings was fully developed, and the evidence showed that plaintiff was not entitled to recover on that cause of action.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4604–4620; Dec. Dig. § 1178.*]

Appeal from District Court, Wichita County; P. A. Martin, Judge.

Action by Willis Copeland against the Ft. Worth & Denver City Railway Company. From a judgment for plaintiff, defendant appeals. · Reversed and remanded, with instructions.

Carrigan, Montgomery & Britain and Chas. C. Huff, all of Wichita Falls, and Thompson & Barwise, of Ft. Worth, for appellant. Mathis & Kay, of Wichita Falls, for appellee.

SPEER, J. Willis Copeland sued the Ft. Worth & Denver City Railway Company to recover damages for personal injuries sustained by him while in the service of the defendant company as switchman, and while engaged in its yards at Wichita Falls in the work of switching some cars engaged in interstate commerce. The plaintiff had a judgment for $17,000, and the defendant has appealed.

A brief statement of the facts will suffice for the purposes of this opinion: At the point in appellant's yards where the accident occurred, the company has several tracks known, respectively, as tracks No. 1, No. 2, and No. 3, paralleling its main line, each of which is reached from the main line by a track known as the "south lead." Two crews known, respectively, as the north and south yard crews were at work in the yards exchanging cars of freight, and otherwise shifting cars from one track to another. Appellee belonged to the north crew, and was what is known as "fieldman" of that crew. In the discharge of his duties, he was in the yards about track No. 2 in the vicinity of a detached car known as I. & G. N. car No. 2550, about 175 feet north of where track No. 2 leaves the south lead line. He had received information from one Miller, the foreman of the south yard crew, that Ben Smith's crew, to which appellee belonged, was in the north yards, and would push his train through on track No. 2. In anticipation of Smith's pushing through, appellee went to the north end of I. & G. N. car No. 2550 to prepare the coupler ready to couple that car onto Smith's train, and, while engaged in that task, a string of three cars, which had been detached and kicked in on track No. 2 from the south by Foreman Miller, struck the I. & G. N. car, knocking appellee down and injuring him in the manner alleged in his petition.

The grounds of negligence alleged and

submitted as a basis for recovery were: First. That the three cars were kicked in free from care and control; second, that they were so kicked in at too high a rate of speed, causing too great an impact with the standing car; and, third, a failure to notify or inform appellee that this cut of three cars would be kicked in onto track 2.

The appellant requested three several charges withdrawing from the consideration of the jury the issues made by these three alleged grounds of negligence. We have carefully considered the evidence bearing upon each of these issues, and are of the opinion these charges should have been given and each of the issues withdrawn from a consideration of the jury; in effect, that a summary instruction should have been given for the defendant company.

[1] As to the first issue—that is, that the company was negligent in kicking the three cars in on track 2 free from care and control—we find that such cars were cut loose from Foreman Miller's train, and to use the language of the yards, were "shunted in" on track No. 2, free from care and control in the sense that no employé was stationed on said cars, or either of them, or about them, to control their movements, but all the evidence, without dispute, shows that this was the usual and customary way of doing such work, and there is no evidence that the same ever was done, or should have been done, in any other way.

As to the second ground—that is, that the cars were propelled at too high a rate of speed—there is no testimony estimating the speed at more than five to six miles an hour at the time the cut was made, and the witnesses giving this testimony further stated that this speed would decrease, and did decrease, as the cars rolled north along the track toward appellee. No witness testified that this was an unusual or an unnecessary speed, or that the same was dangerous. Appellee's testimony, showing that the cars, after striking and knocking him down, rolled some distance further before stopping, could at most constitute only a scintilla of evidence, but lacks that definiteness necessary to support a judgment, to the effect that the speed at which the cars were thrown onto the track was a negligent one.

With respect to the third ground of negligence—that is, that appellee was given no warning of the approach of the cut of cars—we find that such warning was not given; but the undisputed facts further show that it was not customary or usual to give such warning. There was no rule of the company requiring it, and no witness testified that that duty devolved upon Miller, or any one else for the company. In short, upon all the issues submitted, we find that the acts and conduct of appellant were not negligent, but were done and performed in the usual and customary manner with appellant and other railroads for doing such things. Moreover,

the evidence shows, without dispute, that appellee was an experienced switchman, and thoroughly familiar with the work at which he was engaged, and thoroughly familiar with the customary methods of doing the work which he was engaged in doing at the time he received his injuries, and therefore conclude that he assumed the risk of the injuries received by him. He knew that such cars as were kicked in by the various crews onto these side tracks were not under the control and care of an employé, that necessarily and customarily they were kicked in at different rates of speed, sometimes barely reaching the desired destination, and again going much farther, because of the impossibility of gauging accurately the speed necessary to send the detached cars the proper distance, and furthermore knew that, under such circumstances, no warning was given to the fieldman engaged about the tracks.

[2] A point is made by appellee that, under the operation of the federal Employers' Liability Act (Act April 22, 1908, c. 149, 35 Stat. 65 [U. S. Comp. St. Supp. 1911, p. 1322] Fed. Statutes, Anno. Sup. 1909, p. 584), the defense of assumed risk is abolished, but we have recently held otherwise. Freeman v. Powell, 144 S. W. 1033; Id., 105 Tex. 317, 148 S. W. 290.

For the error of the court in refusing appellant's requested charges, the judgment of the district court is reversed, and judgment here rendered in favor of appellant.

## On Motion for Rehearing.

We are asked by appellee to remand the cause for another trial in the event we adhere to our former conclusion to reverse the judgment for the insufficiency of the evidence.

[3] We are quite thoroughly of the opinion the motion should be overruled on the merits of the case, but, as to whether the cause should be remanded or here rendered, we have had more difficulty. Article 1626, Revised Statutes 1911, provides: "When the judgment or decree of the court below shall be reversed, the court shall proceed to render such judgment or decree as the court below should have rendered, except when it is necessary that some matter of fact be ascertained or the damage to be assessed or the matter to be decreed is uncertain, in either of which cases the cause shall be remanded for a new trial in the court below." It is the contention of appellant that the language of this article is mandatory, and that, since under the pleadings and evidence the trial court should have instructed a verdict for it, for a refusal to do which this court has reversed the judgment, it becomes the duty of this court to render judgment in its favor. On the other hand, it is the contention of appellee that the cause should be remanded, to enable him to amend his pleadings and to seek a recovery upon the ground of the negligence of the appellant in

maintaining a defective coupler, in violation of the federal Employers' Liability Act, a ground not relied on in the last trial. It has been often held, in a general way, that, where a case has been fully developed in the trial court, and where, as matter of law, under the pleadings and evidence, one party is entitled to a judgment, it becomes the duty of the Court of Civil Appeals, on reversing a judgment in favor of the other, to render such judgment as the trial court should have rendered below. And in this connection some of the authorities have spoken of the article of the statute above quoted as being mandatory. H. & T. C. Ry. Co. v. Strycharski, 92 Tex. 1, 37 S. W. 415; Tillman v. Erp, 121 S. W. 547; Stevens v. Masterson, 90 Tex. 417, 39 S. W. 295, 921; M., K. & T. Ry. Co. v. Moses, 144 S. W. 1039. All of the authorities, however, and even the statute itself, require the cause to be remanded rather than rendered, when it is necessary that some matter of fact be ascertained, and the question of difficulty presented is whether or not a cause will be remanded to enable a plaintiff to amend his pleadings in order to ascertain such necessary fact. We have finally concluded that the proper practice is to remand.

It is to be observed that the statute, in authorizing or requiring the remanding of a case when it is necessary that some matter of fact be ascertained, does not necessarily convey the idea that the parties, on a remanding of the case, will be limited on another trial to the issues raised by the pleadings already filed. The ends of justice would call as loudly for the remanding of a cause to ascertain a necessary fact, where that fact, to be legally ascertained, would have to be pleaded for the first time, as though it could be ascertained without such amendment. We think the statute in spirit contemplates only that, where a case has been fully developed in the trial court, both in the pleadings and the evidence, and it is apparent, as matter of law, that only one judgment could be sustained, that the appellate court should proceed to render that judgment. But, where from the facts it reasonably appears that on another trial the plaintiff may make a case, or the defendant establish a defense, even though a new pleading should be required, the ends of justice require that such cause, on being reversed, should be remanded, and the party given an opportunity to develop his case or present his defense. We are not at all without authority for this position.

In Wilkin v. Owens, 102 Tex. 197, 114 S. W. 104, 115 S. W. 1174, 117 S. W. 425, 132 Am. St. Rep. 867, the grantee of certain heirs owning land sued the purchaser at an irregular administrator's sale, and recovered the land. The defendant in the action was denied the equity of subrogation as to the payments made to the administrator, because such right was not pleaded, and the Supreme Court, after reversing the judgment which he had recovered in the district court first rendered judgment against him, but later, on his motion for rehearing, remanded the cause, to enable him to amend his pleading so as to claim the money paid the administrator for the land as a condition to its recovery. In Houston, etc., Ry. Co. v. State, 24 Tex. Civ. App. 117, 56 S. W. 228, the practice in this court was indicated by Justice Stephens in the following language: "We would not reverse a judgment to enable a party to plead and prove a new issue, but, in reversing judgments, we have in several instances declined to exercise our power to proceed to render judgment, where it seemed probable that the ends of justice would be better subserved by remanding the cause for a new trial." The cause was there remanded to afford one of the parties an opportunity to amend his pleadings. In K. C., M. & O. Ry. Co. v. Pope, 152 S. W. 185; Id., 153 S. W. 163, this court sustained an appellant's assignment that a verdict should have been instructed in its favor, and reversed a judgment against it, yet we remanded the cause for the obvious purpose of enabling the plaintiff in the action to amend the cause of action. On rehearing of that cause, we said: "No judgment other than one for the defendant could have been rendered, since the case pleaded was not proved, and the case proved was not pleaded." Remanding the case, therefore, could have meant nothing less than that, in our opinion, the ends of justice required such course, and that the statute quoted above did not forbid.

Appellee's motion for rehearing is therefore granted, to the extent that the cause is remanded for another trial, with instructions that, if on another trial the pleadings and evidence are the same as they were on the last trial, the court will instruct a verdict for the defendant.