## MOBILE & OHIO RAILROAD COMP'Y vs. MALONE.

[TRESPASS FOR KILLING CATTLE, &C.]

1. *Railroads; sections of Revised Code in relation to; how construed.*—The sections of the Revised Code upon railroads are to be construed as one law, and taken together as a whole.
2. *Railroad companies; when liable for stock killed, &c.*—Railroad companies, in this State, are liable for damages for killing or injuring stock by their locomotives and cars, if they fail to comply with the requirements of caution prescribed in the Revised Code, when such compliance is within the power of their engineers or agents.
3. *Same; what diligence must be shown to relieve from liability.*—But i these requirements can not be complied with, the company is bound to show that their agents or servants used all the means in their power, under the circumstances, known to skillful engineers, to prevent the injury complained of. When this is shown the company is not liable.
4. *Claim, presentation of; what sufficient.*—Proof that the auditor of the company had frequently acted as depot agent and received and paid claims for stock killed, there being no proof that there was any depot agent at the place where the claim was presented, shows a sufficient compliance with the Revised Code, requiring claims for stock killed to be presented in writing in sixty days to the president, treasurer, superintendent or some depot agent of the corporation.

APPEAL from Circuit Court of Mobile.
Tried before Hon. JOHN ELLIOTT.

The facts are fully stated in the opinion.

GEORGE N. STEWART & P. HAMILTON, for appellant.
WM. BOYLES, *contra.*

(No briefs came into Reporter's hands.)

PETERS, J.—This is an appeal from a judgment of the circuit court of Mobile county, which was rendered at the spring term thereof, in 1869. The railroad corporation brings the appeal to this court. The appellee, Malone, obtained a judgment below for one hundred dollars and costs. The action was trespass for killing four cows, the property of said Malone, by the cars and locomotive on said railroad, in this State, while said cars and locomotive were proceeding on the roadway of said corporation in the ordinary business of said company. This cause, on the trial below, turned upon the charge of the court. That portion of the charge necessary to be noticed, was to the effect that, "this case was governed by '§ 1406 of the Revised Code; and under that section it was necessary, to entitle the plaintiff to recover, that it should be proved that the cattle were killed by the cars of the company while running, that the plaintiff owned them, and the value of the cattle killed, and nothing more." This charge was excepted to, and made a part of the record as required by law.

The sections of the statute of this State, which govern this action and control the liability of the appellant, said railroad company, are in the following words, that is to say : "§ 1399. The engineers or other persons having control of the running of a locomotive on any railroad in this State must blow the whistle or ring the bell at least one-fourth of a mile before reaching any public road-crossing, or any regular depot or stopping-place on such road, and continue to blow such whistle and ring such bell, at intervals, until he passes such road-crossing, and until he reaches such depot or stopping-place. He must, also, blow the whistle or ring the bell immediately before and at the time of leaving such depot or stopping-place. He must, also, blow the whistle or ring the bell before entering any curve crossed by a public road on a cut where he can not see at least one-fourth of a mile ahead, and approach and pass such crossing, in such cut, at such moderate speed as to prevent accident in the event of an obstruction at the crossing ; he shall, also, be required to blow the whistle or

ring the bell on entering into the corporate limits of any town or city, and continue to do so until he has reached his destination or passed through such town or city; he must, also, do the same on leaving such town or city. He must, also, on perceiving any obstruction on the track of the road, use all means in his power known to skillful engineers, (such as the application of his brakes and the reversal of his engine,) in order to stop the train."   *    *

"§ 1401. A railroad company is liable for all damage done to persons, stock or other property, resulting from a failure to comply with the requirements of § 1399, (1204a) or (from) any negligence on the part of such company or its agents; and when any stock is killed or injured, or other property damaged or destroyed by the locomotive or cars of any railroad, the burden of proof in any suit brought therefor is on the railroad company to show that the requirements of § 1399, (1204a) were complied with at the time and place when and where the injury was done."

"§ 1406. Wherever any live stock or cattle of any description shall be killed or injured by the cars or locomotives of any railroad in this State, the corporation owning such railroad shall be liable to the owner for the value thereof, if killed, or the damage thereto if injured."—Rev. Code, §§ 1399, 1401, 1406.

There is another section of the Revised Code which bars such claims, if not presented in writing to the president, treasurer, superintendent, or some depot agent of the corporation sought to be charged, or unless suit is brought within sixty days after the claim accrues.—Revised Code, § 1402.

From the foregoing statement and an examination of the statutes digested into the Revised Code, it will be seen that the law, as there found, contains parts of several acts, passed before 1860, which bear on this case. The act of 1852, which is found in § 1406 of the Revised Code, made the liability of the railroad company for the killing and injury of stock by their cars and locomotives absolute, whatever diligence might be used to avoid it.—*Nashv. & Chat.*

*Railroad Company v. Peacock,* 25 Ala. 229. But the act of 1858, which is contained in §§ 1399, 1400, 1401 of the Rev. Code, makes the company liable only when their agents fail to take the precautions prescribed by that statute, or when they have been guilty of negligence. These sections, construed together, necessarily modify each other.—*Nashville & Decatur Railroad Co. v. Comans,* 45 Alabama, p. 437. The act of 1852 made the corporation liable for damages on account of the acts of its agents and servants, and the act of 1858 greatly modified the circumstances under which such liability could be enforced.

All railroad companies, as common carriers, are liable for negligence. They are also liable under the law above quoted when they act in that capacity.—Redf. on Common Car. p. 27, § 37, *et seq.; Selma & Meridian Railroad Co. v. Butts & Foster,* 43 Ala. 385. But this is quite a different liability from that insisted on in this action. Here the railroad company did not act as the carrier of the stock killed. It is contended that the company acted as a wrongdoer and a trespasser.

The corporate powers give the company no authority to kill stock or to injure it, because it is found on the track of the road-way. If it did, this would be a license. And a party justifying under a license must show it. This would be so, even without the statute.—1 Greenl. Ev. §§ 74, 81; Rev. Code, § 1301, *supra.* To kill one's stock, even a dog, is a trespass, and it renders the party who does the act of killing a trespasser, if he has no legal excuse. The legislature has extended this liability to railroad corporations, when the act complained of has been done by their servants and agents. And if the killing is not accidental, the question is not one of diligence or negligence, but of right to kill or injure the stock that may be on the road. To give such a right there must be law for it, or the trespass can not be excused.—9 Bac. Abr. (Bouv.) *Trespass,* p. 438; *Parker v. Wise,* 27 Ala. 481; *Rhodes v. Roberts,* 1 Stewart, 145; *Lindsay v. Griffin,* 22 Ala. 629; 3 Bac. Com. 208.

It may, however, be said, that a railroad company is an artificial person, and is entitled to the same defenses that

a citizen could make. They have duties to perform which are not only important to the corporation, but also to the public. And in the necessary performance of the duties imposed upon them by law, the legislative authority of the State intends to grant them immunity for such accidental injuries as may accrue, in the prosecution of their business, without fault on their part. And at the same time this authority has prescribed the requirements of the precaution necessary to be used, in order to free the company from fault. The corporation, then, must show that its agents or servants did use *all the means in their power*, known to skillful engineers, to prevent the disaster; that is, that the brakes were properly used; the engines were reversed, to slacken the speed of the train; and the whistle blown *or* the bell rung, to scare the stock from the track, and to give it every possible moment to escape, without endangering the safety of the train; or that all this was impossible and unavailing, or could not have been done more completely than it was done under existing circumstances. The train need not be "stopped." But it should be "slowed," (if possible, and safe to the train,) and its velocity should be abated, in order to give the stock time to move off from the railway track. When this is not done, when it is possible and safe for the train to do it, then there is a *failure* to comply with the requirements of the statute, and the corporation becomes liable for the damages. But this point does not necessarily arise in this case, as there is no proof of any attempt to arrest the speed of the train, or to scare the stock from the road-way, by the whistle *or* the bell. The proof is, that it was impossible to "stop" the train, after the cattle were discovered on the track of the road, before the collision took place which destroyed them. The passenger trains on our railroads move at a velocity of about twenty miles in an hour, or at the rate of a mile in three minutes. The bill of exceptions shows that the cattle were first discovered on the road about seventy-five yards ahead of the locomotive, and that it required about three hundred yards running "to stop the train." Then the engine might have been "slowed" about one-fourth

of its speed in seventy-five yards. This might have allowed the cattle time to have escaped, and to have been saved to the owner. This, it seems, the law requires shall be done, or attempted.—*Gr. W. R. R. Co. v. Geddis*, 33 Ill. 304.

All the sections of the Revised Code on railroads are upon the same subject-matter, and were enacted as a whole on the adoption of the Code. Therefore, they constitute one law. Thus construed, section 1406 is subject to the same limitations with section 1401, and both these are controlled by section 1399.—*Nashville & Decatur R. R. Co. v. Comans*, 45 Ala. 437.

The evidence of the presentation of the claim to Beers, as shown in the bill of exceptions, was sufficient. It ought not to have been rejected. The testimony of the witness was, that Beers " had acted as an agent of the company at their depot in Mobile, and that he (witness) had before frequently presented such claims to said Beers, who received them, and that such claims had been paid." It was shown that Beers was the auditor of the company, but it was not shown that the company had any other depot agent in Mobile. This testimony, so far as it went, was certainly competent to show whether Beers was acting as depot agent or not, at the time the claim was presented. If he was, then the presentation was sufficient. These were facts that the jury were authorized to find, and this evidence tended to establish them. It is not known to the court that the offices of depot agent and auditor of the railroad company are incompatible, so that the same person may not discharge the functions of both at the same time. But when there is a known person filling the offices designated by the Code, as the individuals to whom such claims as that sued on in this case should be presented, in order to save it from the effect of the bar, then the claim, in writing, should be presented to some one of these officers within the time limited by law. When, however, there is no such person known to be such officer of the company, then any one acting as such, with the sanction of the company, would be sufficient. The company may have the duties of any of its offices temporarily discharged by any competent person, and such

temporary officer can bind the company, while acting within the scope of his powers.—*Levi v. Lynn & Boston Railway*, 11 Allen, 300,

This view of the law in this case leads me to the conclusion that the learned judge in the court below mistook the proper construction of the statute above recited. The judgment of the court below is therefore reversed, and the cause is remanded for a new trial.