# Wytheville.

## W. S. FORBES & CO. V. SOUTHERN COTTON OIL CO.

### June 16, 1921.

1. PLEADING—*Amendment—Demurrer—Appeal and Error—Harmless Error—Moot Question.*—Plaintiff was permitted to prove its whole case under a second amended declaration, but having excepted to the ruling of the trial court sustaining a demurrer to the original and first amended declarations, as provided by section 6116 of the Code of 1919, it insisted that the Supreme Court of Appeals should pass upon the sufficiency of the original and amended declarations.

    *Held:* That if there was error in sustaining the demurrer it was harmless, and the question presented was moot, and the Supreme Court of Appeals does not undertake to correct harmless errors.

2. SALES—*Usages and Customs—Evidence of Prior Dealings Between Parties.*—In an action by buyer against seller for failure of delivery, plaintiff relied upon a trade usage and also upon the manner of doing business between the parties. The testimony of a witness for plaintiff did not establish any trade usage on the subject that could affect the express contract of the parties, nor did it show any prior dealings that could affect such contract relating only to two other distinct and separate contracts with no relation to each other, one before and the other after the contract in litigation.

    *Held:* That the court did not err in excluding this testimony.

3. SALES—*Furnishing Cars for Delivery—Time of the Essence of the Contract.*—In a contract for the sale of crude cotton seed oil, the buyer agreed to furnish two tank cars at a certain time. It appeared that the oil advanced in price between the date of the contract and the time for furnishing the cars.

    *Held:* That, in contracts of this nature, time is of the essence of the contract, and failure to perform within the time limited by the contract, as a rule, constitutes a breach.

4. APPEAL AND ERROR—*Harmless Error—Refusal to Allow Witness to Answer Question Where Same Question is Afterwards An-*

*swered by Witness.*—Refusal to permit a witness to answer a question where the same question was put to the same witness at a later stage, and he was permitted to answer it, if error, is harmless.

5. ORDER OF PROOF—*Discretion of Court.*—The order of the examination of witnesses lies chiefly in the discretion of the trial court.

6. CONSTITUTIONAL LAW—*Jury Trial—Seventh Amendment of the Constitution of the United States.*—The seventh amendment of the Constitution of the United States, providing for the preservation of the right of trial by jury, is restricted to federal courts, and is no applicable to procedure in the State courts.

7. CONSTITUTIONAL LAW—*Right of Trial by Jury*—While trial by jury is never to be taken away by implication or without positive words in an act of assembly, the laws sometimes give a court express authority to proceed without the solemnity of a jury; and the same thing is understood when power is given the court to proceed upon motion in a summary way.

8. STATUTES—*Construction—Presumption in Favor of Constitutionality—Section 6251, Code of 1919, Providing for Judgment by Trial Court Where a Verdict is Set Aside as Against the Evidence.*—In drafting and submitting to the legislature section 6251, Code of 1919, providing that when the verdict of a jury in a civil action is set aside by the trial court upon the ground that it is contrary to the evidence, a new trial shall not be granted if there is sufficient evidence before the court to enable it to decide the case upon its merits, the revisors of the Code of 1919 gave their deliberate judgment as to its constitutional validity. To this must be added the judgment of the legislature in adopting it. In a peculiar sense, therefore, the Supreme Court of Appeals ought not to pronounce the section unconstitutional unless it is plainly so—so plainly as to leave no doubt on the subject.

9. NEW TRIALS—*Setting Aside Verdict as Against the Evidence—General Rule.*—If there is conflict of testimony on a material point, or if reasonably fair-minded men may differ as to the conclusions of fact to be drawn from the evidence, or if the conclusion is dependent upon the weight to be given the testimony, in all such cases the verdict of the jury is final and conclusive, and cannot be disturbed either by the trial court or by the Supreme Court of Appeals; or if improperly set aside by the trial court, it will be reinstated by the Supreme Court of Appeals. It is not sufficient that the judge, if on the jury,

would have rendered a different verdict. It is not sufficient that there is a great preponderance of the evidence against it.

10. NEW TRIALS—*Setting Aside Verdict as Against Evidence—General Rule.*—But with all the respect that is justly due to the verdict of a jury, and which is freely accorded to it, if there has been "a plain deviation from right and justice," even a court of law will not make itself a party to such a wrong by entering up judgment on it.

11. CONSTITUTIONAL LAW—*Right of Trial by Jury—No Facts Upon Which a Jury Would be Warranted in Fiding a Verdict.*—If a litigant has offered no facts upon which a jury would be warranted in finding a verdict in his favor, then he has not presented a controversy respecting property or a suit between man and man that entitles him to the jury trial granted by the Constitution. (Constitution of 1902, sec. 11.) If no evidence is offered, or none that would warrant a jury in finding a verdict in accordance therewith, then the rights of the parties become a question of law, and there is no controversy to be determined by a jury, and the constitutional guaranty does not apply.

12. WORDS AND PHRASES—*"Suit."*—The word "suit" is not always used in a strictly technical sense. Technically the word "suit," is sometimes restricted to litigation in a court of equity, and the word "action" is applied to litigation at law.

13. WORDS AND PHRASES—*"Suit"—Right of Trial by Jury.*—As used in Constitution of 1902, section 11, providing that in controversies respecting property, and in suits between man and man, trial by jury is preferable to any other, and ought to be held sacred, the word "suit" is manifestly used in much the same sense as the word "controversies" in the preceding part of the same sentence.

14. JURY AND JURY TRIAL—*Right of Trial by Jury—Application of Section 11, Constitution of 1902.*—The constitutional guaranty of a jury trial (Constitution of 1902, section 11) is by no means universal in its application. Thus, the provision has no application to suits in chancery, demurrer to the evidence, case agreed, special verdicts, and other methods of procedure.

15. NEW TRIALS—*Judgment by Trial Court on the Merits—Section 6251, Code of 1919—Object of the Statute.*—The object of section 6251, Code of 1919, is to put an end to litigation, to obviate repeated trials and the delay and expense of litigation, and to remove the temptation to perjury by patching up the weak places disclosed at a former trial, not by after-discovered evi-

dence, but by the same witnesses relied upon at the former trial.

16. NEW TRIALS—*Judgment by Trial Court on the Merits—Section 6251, Code of 1919—Constitutionality of Act.*—When a verdict is properly set aside as contrary to the evidence, or without evidence to support it, the power to enter a final judgment conferred upon the court by section 6251 of the Code of 1919 is not the power to determine any disputed fact in a controversy touching property or a suit between man and man, and is not forbidden by the Constitution.

17. STATUTES—*Construction—Harmonizing Sections of the Code—Section 6003 and Section 6251 of the Code of 1919.*—If two sections of the Code can stand together, they must, and there is no difficulty in harmonizing section 6003, forbidding peremptory instructions directing a verdict, with section 6251 of the Code of 1919, providing for final judgment where a verdict is set aside as without evidence or contrary to the evidence.

18. STATUTES—*Construction—Code—Earlier and Later Provisions.*—If the various sections of the Code are harmonious and their meaning plain, resort cannot be had in construing them to the original statutes. If, however, there is a substantial doubt as to their meaning, the law which was the subject of the revision may be looked to in ascertaining that meaning; and if they are inconsistent and cannot stand together, the original statutes and the respective dates of their enactment may be examined to see what was the last expression of the will of the legislature on the subject.

19. APPEAL AND ERROR—*Instructions—Invited Error.*—In an action for breach of contract of sale, where defendant insisted that the contract was made with reference to the rules of a certain association, and an instruction upon the subject was given to the jury at its instance, it cannot on appeal complain of a finding in accord with that view.

20. SALES—*Burden of Proof—Furnishing Cars for Delivery.*—Where plaintiff, the buyer of cotton seed oil, was to furnish tanks for its delivery, the burden of proof is upon him to show that the tanks were delivered in time.


Appeal from a decree of the Circuit Court of the city of Richmond in an action of assumpsit. Judgment for defendant. Plaintiff appeals.

*Affirmed.*

*S. S. P. Patteson,* for the appellant.

*Coke & Pickrell, Richard W. Carrington* and *Jos. M. Hurt, Jr.,* for the appellee.

The opinion states the case.

BURKS, J., delivered the opinion of the court.

This is an action of assumpsit brought by the plaintiff in error, a corporation, (plaintiff below) against the defendant in error (defendant below) to recover damages for failure to deliver according to contract two tanks of crude cotton seed oil. There was a verdict for the plaintiff for $800 which the trial court set aside and entered judgment for the defendant pursuant to section 6251 of the Code. The plaintiff excepted and the case is brought here on a writ of error to that judgment.

[1] The plaintiff filed an original and also an amended declaration, to which the trial court sustained a demurrer, and the plaintiff, by leave of court filed a second amended declaration. A demurrer to the last declaration was over-ruled, and the case was tried on the general issue of non-assumpsit. The plaintiff was permitted to prove its whole case under the second amended declaration, but, having excepted to the ruling of the trial court sustaining the demurrer to the original and first amended declarations, as provided by section 6116 of the Code, it insists that we shall pass upon the sufficiency of the original and amended declarations. If there was error in sustaining the demurrer thereto it was harmless, and the question presented is moot. The statute was not intended to apply to such a case. This court does not undertake to correct harmless errors.

The contract which is the subject of litigation was made by brief telegrams of offers by the defendant which were accepted by the plaintiff, and is substantially as follows:

On March 6, 1917, the defendant agreed to sell to the plaintiff two tanks of basis prime crude cotton seed oil, at ninety cents a gallon, f. o. b. North Carolina mills, delivery to be made last half of March in tanks to be furnished by the plaintiffs. The defendant had a number of such oil mills and was to notify the plaintiffs at which of its mills it would make delivery.

On March 16, 1917, the defendant wrote the plaintiff from Savannah, Ga., as follows:

"Referring to your purchase of March 6th of two tanks basis prime crude cotton seed oil at ninety cents per gallon f. o. b. North Carolina mills, calling for last half March shipment.

"Please forward immediately one tank each to The Southern Cotton Oil Co. mills, located at Fayetteville and Wilson. N. C., furnishing Mr. E. B. Borden, Jr., D. M. The Southern Cotton Oil Co., Goldsboro, N. C., with full shipping instructions, furnishing copy of your advices to the undersigned.

"Yours truly,
"C. W. BRIDGER,
"Traffic Department."

It is not positively shown when this letter was received, though the plaintiff admits it might have been received as early as March 18. On March 21, the plaintiff replied as follows:

"Answering your letter of the 16th, we will arrange to send the two empty tanks, South, the first of next week, we will send them to the points mentioned, Fayetteville and Wilson supplying full shipping instructions to Goldsboro, and copy of our advices to you at Savannah."

The tank cars were not delivered to the defendant for the reception of the oil during the last half of March. One of them was shipped from Richmond March 30, but did not

reach its destination till April 2. The other was shipped from Richmond April 2 and reached its destination April 5. The plaintiff relies upon a trade usage and also upon the manner of doing business between the parties operating under former contracts as an excuse for not making prompt delivery of the tanks, and offered evidence to show a well established usage of trade in that business not to require delivery of the tanks on the exact date called for in the contract, but simply to require the date to be approximated, also to show prior dealings between the same parties in the performance of similar contracts in which approximate dates of delivery and reshipment of tank cars had been accepted as performance of the contract. These facts were sought to be established by the testimony of W. G. Hockaday, the plaintiff's sales manager and purchasing agent. But the questions put to the witness were objected to on the ground that the plaintiff was seeking to prove "not a custom of trade, or custom of this particular trade, but he wants to take the preceding dealings to modify the express written terms of this contract." Upon this contention the trial court ruled:

"If there is a general custom of the trade, well known and acted upon by all parties, and that custom is pleaded, then you can prove that custom as a well known custom in the trade, and it becomes part and parcel of every contract; but the mere fact that there were dealings or other contracts by which these other contracts were allowed to be changed cannot come in this case."

[2-3] The trial court, not being satisfied that the testimony of the witness was of such character as ought to be allowed to go to the jury, sent the jury out, and permitted the witness to be examined and cross-examined at length to ascertain the facts on these points, and, having ascertained the extent of his knowledge, excluded his evidence on these questions. The testimony of the witness did not establish

any trade usage on the subject that could affect the express contract of the parties, nor did it show any prior dealings that could affect such contract. While the witness testified that the plaintiff had been dealing with the defendant for the purchase of cotton seed oil for several years prior to the present controversy, his examination disclosed only two other contracts between them for the purchase of cotton seed oil, one in which the contract called for the sale and delivery in first half of February preceding the contract in suit of two tanks in which the tanks were not delivered till February 16 and 19, but were accepted and filled by the defendant. The other for sale and delivery of three tanks at a price stated "subject to market changes" in the first half of April immediately following the March contract here in litigation. Only one of these contracts was prior to the contract in suit, and that was for delivery the first half of February. The fact that the plaintiff was not held to the exact date of delivery under the February contract gave it no right to expect or demand a similar indulgence on the March contract. The circumstances surrounding the two contracts may have been entirely different. Indeed, the record shows that the contract in suit was entered into on March 6, 1917, and that between that date and March 31 there was an advance of from five to ten cents a gallon in the oil. No such facts are shown as to the February delivery. In contracts of this nature, time is of the essence of the contract and failure to perform within the time limited by the contract, as a rule, constitutes a breach. *Bowes* v. *Shand,* 2 App. Cas. 455, 463; *Norrington* v. *Wright,* 115 U. S. 188; 6 Sup. Ct. 12, 29 L. Ed. 366; *Cleveland Rolling Mill* v. *Rhodes,* 121 U. S. 255, 7 Sup. Ct. 882, 30 L. Ed. 920; *Norfolk Hosiery Co.* v. *Aetna, &c. Co.,* 124 Va. 221, 235, 98 S. E. 43. The trial court committed no error in excluding the testimony.

[4-5] Exception was taken to the ruling of the trial court in refusing to permit a witness to answer a question, but the same question was put to the same witness at a later stage and he was permitted to answer it.   The error, if any, was harmless.   The order of the ·examination of witnesses lies chiefly in the discretion of the trial court. *Robertson's Ex'r.* v. *Atlantic Coast Realty Co.,* 129 Va. —, 106 S. E. 521.

Exception was also taken to the action of the trial court in refusing to permit the plaintiff to ask its only witness several questions relating to prior dealings between the plaintiff and the defendant with reference to the sale and purchase of crude cotton seed oil.   As hereinbefore stated, the court permitted the witness to be examined and cross-examined at length, out of the presence of the jury, and thereby learned that he could not testify as to any usage of trade in the business that could affect the contract and that as to contracts between the parties to this action, he testified as to only two other contracts, one before and the other after the one here in litigation, and that they were separate and distinct contracts, with no other relation to each other except that they were between the same parties, for the sale of crude cotton seed oil, and deliveries were for the last half or first half of a month.   Under these circumstances, the trial court refused to permit the questions to be answered.   In this there was no error.   As to how far a trade usage may affect an express contract, see *Northshore Imp. Co.* v. *New York, &c. R. Co.,* 130 Va., 108 S. E. 11, decided today.

The chief complaint of the plaintiff in error is of the action of the trial court in setting aside the verdict in favor of the plaintiff on the ground that it was contrary to the evidence or without evidence to support it, and in entering judgment for the defendant, as provided in such case by section 6251 of the Code.   The plaintiff in error insists that there was evidence to support the verdict, and that the

court erred in setting it aside, but that if the verdict was properly set aside a new trial should have been awarded because section 6251 is unconstitutional, in that it deprived the plaintiff of a trial by jury. The plaintiff in error further insists that if section 6251 is held to be constitutional, the trial court erred in not rendering judgment for the full amount claimed by the plaintiff, instead of a judgment for the defendant. The validity of section 6251 is the storm center of the contention of the plaintiff in error and will be first disposed of.

[6-8] It is claimed that section 6251, which is copied in the margin,* denied to the plaintiff a trial by jury, which is forbidden by section 11 of the Constitution, which declares that "in controversies respecting property and in suits between man and man, trial by jury·is preferable to any other, and ought to be held sacred; but the General Assembly may limit the number of jurors for civil cases  *  *  * "

The earlier Constitutions used the phrase "the *ancient* trial by jury," but the word "ancient" was stricken out by the Constitution of 1869, and has not since appeared. The provision for a jury of less than twelve was first inserted in the Constitution of 1902. These changes indicate certain departures from the "ancient" common law.

The provision has seldom been before this court for interpretation. In *Watson* v. *Alexander,* 1 Wash. (1 Va.) 340, 356, it is said:

"The Constitution declares, 'that trial by jury is preferable to all others, and ought to be held sacred.' To go no farther, it may be affirmed, that this mode of trial is never

---

*"When the verdict of a jury in a civil action is set aside by a trial court upon the ground that it is contrary to the evidence, or without evidence to support it, a new trial shall not be granted if there is sufficient evidence before the court to enable it to decide the case upon its merits, but such final judgment shall be entered as to the court shall seem right and proper. If necessary to assess damages, which have not been assessed, the court may empanel a jury at its bar to make such assessment, and then enter such final judgment. Nothing in this section contained shall be construed to give to trial courts any greater power over verdicts than they now have under existing rules of procedure, nor to impair the right to move for a new trial on the ground of after-discovered evidence."

to be taken away by implication or without positive words in an act of assembly. Laws for this purpose sometimes give the court an express power to proceed, without the solemnity of a jury; most usually to proceed upon motion in a summary way, by which the same thing is understood."

In *Burke* v. *Levy's Ex'rs*, 1 Rand. (22 Va.) 1, on a motion for award of execution on a forthcoming bond, it was held that where *non est factum* is pleaded the court may enter judgment without the intervention of a jury, or it may empanel a jury at its discretion. It was said that "although that court might have called in a jury to decide the points submitted by the plea, it was not compelled to do so." The holding is based upon the fact that the proceeding was "by action in a summary way," and *Watson* v. *Alexander, supra,* is cited as authority. In *Salling* v. *McKinney,* 1 Leigh (28 Va.) 42, 19 Am. Dec., 722, the question of the right to a trial by jury does not appear to have been raised, nor is it referred to in any of the opinions delivered, but the reporter (Mr. Benjamin Watkins Leigh) in his report of the case, says: "This was a motion made in the Circuit Court of Scott county by McKinney, late high sheriff of that county, against Salling, his deputy, for the amount of a judgment which the Commonwealth had recovered against McKinney in the general court on account of taxes collected by Salling, which he had failed to pay into the treasury. Salling pleaded several pleas in bar, on which issues were joined, and these issues were tried by a jury. This action and judgment of the trial court were affirmed, but the jury not agreeing, were discharged, and the cause continued to another term; when the court, dispensing with a jury (See *Burke* v. *Levy,* 1 Rand. 1); heard the whole case and gave judgment against Salling for 541 dollars and twenty cents, with interest from November 12, 1882, till paid, and costs; spreading all facts proved in the case upon

the record. From this judgment Salling appealed to this court." The judgment of the trial court was affirmed.

In *Cecil* v. *Early*, 10 Gratt. (51 Va.) 198, 202, the court, speaking of issues of fact raised in a proceeding by motion, says: "The court may itself try the issues, although of fact, or call in a jury for that purpose, at its discretion. *Burke, Adm'r* v. *Leigh's Ex'rs*, 1 Rand. 1; 1 Rob. Pr. 600." The right to proceed without a jury in this summary way seems not to have been doubted, and is not referred to in the opinion.

In 1 Rob. Prac. (old) 600, referred to in the opinion, the following comment is made by that distinguished author: "The trial by jury is never to be taken away by implication, or without positive words in an act of assembly. But laws sometimes give the court an express power to proceed without the solemnity of a jury; and the same thing is understood when the power is given the court to proceed upon motion, in a summary way. Pendleton, president, in *Watson, &c.* v. *Alexander*, 1 Wash. 356. Where jurisdiction is given by motion in a summary way, and the defendants plead *non est factum*, the court may call in a jury to decide the points submitted by the plea, but is not compellable to do so. *Burke's Adm'r*. v. *Levy's Ex'rs*, 1 Rand. 1."

The seventh amendment of the Constitution of the United States provides that, "In suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury shall be otherwise re-examined in any court of the United States, than according to the rules of the common law." But this amendment is restricted to Federal courts, and has no application to procedure in the State courts. *Brown* v. *New Jersey*, 175 U. S. 172, 20 Sup. Ct. 77; 44 L. Ed., 119; *Ches. & O. R. Co.* v. *Carnahan*, 118 Va. 46, 86 S. E. 863, and cases cited.

We are thus left free to decide the question of the validity of the statute, unhampered by any prior binding authority. The statute is a new and important one, and demands careful consideration. There are many cases bearing collaterally on the question, but they cannot all be considered in an opinion of reasonable length. The statute was proposed by the revisors of the Code of 1919, and enacted by the legislature. The revisors were carefully selected with reference to the work to be submitted to them, and it is to be presumed that they gave the statute their careful consideration, and, in drafting it and submitting it to the legislature, they gave their deliberate judgment as to its constitutional validity. To this must be added the judgment of the legislature in adopting it. In a peculiar sense, therefore, this court ought not to pronounce the section unconstitutional unless it is plainly so—so plainly as to leave no doubt on the subject. *City of Roanoke* v. *Elliott*, 123 Va. 393, 96 S. E. 819; *Strawberry Hill* v. *Starbuck*, 124 Va. 71, 97 S. E. 362.

The latter part of the section declares, "Nothing in this section contained shall be construed to give to trial courts any greater power over verdicts than they now have under existing rules of procedure, nor to impair the right to move for a new trial on the ground of after-discovered evidence." What powers did the court then have over verdicts? The rule in this State has been so repeatedly announced that we cannot, within reasonable limits, do more than refer to a few of the decisions.

In *Jackson's Adm'r.* v. *Wickham*, 112 Va. 128, 131, 70 S. E. 539, 540, it is said: "The issue of fact thus sharply drawn was fairly submitted to the jury, and by them resolved in favor of the plaintiff. No rule is better settled by the decisions of this court than that where a case has been properly submitted to a jury and a verdict fairly rendered, it ought not to be set aside, unless manifest injustice has

been done, or unless the verdict is plainly not warranted by the evidence.

"The doctrine is clearly stated by Judge Burks in *Blair and Hoge* v. *Wilson*, 28 Gratt. 69 Va. 165, as follows: 'Every reasonable presumption should be made in support of a verdict of a jury fairly rendered, and according to the long established, well-settled rule of this court, such a verdict cannot be set aside as against the evidence, unless there is a plain deviation—unless the evidence is plainly insufficient to warrant the finding.'

"In *Morien* v. *Norfolk & Atlantic Terminal Co.*, 102 Va. 622, 40 S. E. 907 (which is strikingly similar to the case in judgment), the court said: "In such case the preponderance of evidence cannot influence the action of the court in considering a motion for a new trial. The jury may discard the preponderance of evidence as unworthy of credence, and accept the evidence of a single witness upon which to base their verdict, and upon well-settled principles the verdict cannot be disturbed if the evidence of that witness is sufficient, standing alone, to sustain it. Nor is interference with a verdict authorized where the court merely doubts its correctness, or would itself have found a different verdict. The admissibility of evidence is with the court, but its weight is wholly with the jury.

"Applying these principles to the case in judgment, it is clear that the trial court erred in setting aside the first verdict."

In *Bashford* v. *Rosenbaum Hardware Co.*, 120 Va. 1, 90 S. E. 625, the judgment of the trial court was reversed because it had improperly set aside the verdict of the jury in a personal injury case where the question of the contributory negligence of the plaintiff was involved; the court holding that, "Whether a plaintiff in an action to recover damages for personal injury has been guilty of contributory negligence is a question for the jury under proper instruc-

tions from the court, and their finding will not be disturbed
where the evidence is conflicting, or is such that reasonable
men might fairly differ as to whether there was such neg-
ligence or not. Every reasonable inference should be made
in favor of a verdict fairly rendered, under proper instruc-
tions from the court, in such a case, and it should not be
set aside unless the evidence is plainly insufficient to sup-
port it."

[9-10] In *Palmer v. Showalter,* 126 Va. 306, 101 S. E.
136, it was held that this court "will sustain a verdict, al-
though it was set aside by the trial judge, unless it can be
perceived that there has been a plain deviation from right
and justice, and that the jury have found a verdict against
the law, or against the evidence." These cases are but typi-
cal. Many more could be added. They manifest the great
respect that is accorded the verdict of a jury fairly ren-
dered. It is not sufficient that the judge, if on the jury,
would have rendered a different verdict. It is not sufficient
that there is a great preponderance of the evidence against
it. If there is conflict of testimony on a material point, or
if reasonably fairminded men may differ as to the con-
clusions of fact to be drawn from the evidence, or if the
conclusion is dependent upon the weight to be given the
testimony, in all such cases the verdict of the jury is final
and conclusive and cannot be disturbed either by the trial
court or by this court, or if improperly set aside by the trial
court, it will be reinstated by this court. But with all the
respect that is justly due to the verdict of a jury, and which
is freely accorded to it, if there has been "a plain deviation
from right and justice" even a court of law will not make
itself a party to such a wrong by entering up judgment on
it. The initial step of the trial court, that of setting aside
the verdict, can only be taken either where there is no evi-
dence at all to support the verdict, or else the verdict is
*plainly* contrary to the evidence and does not come within

the rule above stated. This initial step must be taken, under the conditions stated, before the trial court can enter such judgment as to it shall seem right and proper. Such was the state of the law when this statute was proposed and enacted.

It would seem that a litigant who cannot produce sufficient evidence to prevent this initial step ought not. to be granted further indulgence to produce additional evidence when the *judgment of the law* is against him on the case which he has been given the fullest opportunity to present. He is not cut off if he can bring himself within the rule relating to after-discovered evidence.

[11-13] Assuming that this initial step has been properly taken, that the verdict has been rightly set aside, has the legislature the power to authorize the trial court to enter up such judgment as is right and proper? Is it obliged to authorize another trial by jury? Does the Constitution guarantee a jury trial in *all* "suits between man and man?" Must a jury pass upon questions of law as well as of fact? No such claim can be made. We must look to the law as it existed when the Constitution was adopted and as it has been uniformly construed since that time. We think we may also safely assume that it was the substance of "trial by jury" that our forefathers sought to preserve, and not its mere form. The province of the jury is to settle questions of fact, and when the facts are ascertained the law determines the rights of the parties. This law is announced by the court or judge. "Every judgment is the conclusion of a syllogism of which the law is the major (unexpressed) and the fact the minor premise. Such being understood to be the law—and such being the fact *ideo consideratum est,* and then follows the judgment as the conclusion." Tucker's Pl., p. 19. It is the method of ascertaining the fact that is intended to be preserved by the Constitution, but if the litigant offers no evidence of the fact which is essential

to the maintenance of his pleading, or offers so little in op-
position to that of his adversary that a verdict in accord-
ance with that little would be a manifest injustice to his
adversary, in other words, if the litigant has offered no
facts upon which a jury would be warranted in finding a
verdict in his favor, then he has not presented a contro-
versy respecting property or a suit between man and man
that entitles him to the jury trial guaranteed by the Con-
stitution. It is the function of a pleading to state facts,
not law; and of evidence to support the facts alleged in
the pleading. If no such evidence is offered, or none that
would warrant a jury of fairminded men in finding a ver-
dict in accordance therewith, then the rights of the par-
ties become a question of law, and there is no controversy
to be determined by a jury, and the constitutional guaranty
does not apply. The word "suit" is not always used in a
strictly technical sense. Technically the word "suit" is
sometimes restricted to litigation in a court of equity, and
the word "action" is applied to litigation at law. As used
in the Constitution, the word "suit" is manifestly used in
much the same sense as the word "controversies" in the
preceding part of the same sentence. It seems inconceivable
that the framers of the Constitution should guarantee a
jury trial in a "suit between man and man," when there
was no controversy between them. In such a case no right
is in jeopardy which would need such protection, and we
can see no good reason why the court should not pronounce
the judgment of the law upon the case as it stands. The
relevancy and admissibility of the evidence, and whether
or not what is offered is of sufficient probative value to go
to the jury are questions for the court and not for the jury.
So also, under the well settled rule in this State, it is for
the court to say, subject to review on a writ of error, when
a verdict does "manifest injustice" or is "plainly not war-

ranted by the evidence." *Jackson's Adm'r* v. *Wickham, supra.*

That nothing but a question of law is involved where the facts are admitted or established is made manifest from the use of a demurrer. If all of the facts of a case are stated in a declaration, the defendant by his demurrer to the declaration says, admitting all of your statements to be true, you have not stated a case in which the law permits you to recover. No fact is in dispute, but the law is against you. Here is a trial in a suit between man and man, but without the intervention of a jury, because there is no "controversy" for a jury to determine, and yet the judgment upon that state of facts is final. It is the law's conclusion upon the facts stated. So also on a demurrer to the evidence. Here a case for recovery has been stated in the pleadings, but the proof is deficient. The demurrant says, admitting the truth of all of your evidence, or of everything which your evidence even tends to prove, and all proper inferences therefrom, you have not, as a matter of law, proved a case which entitles you to recover. Here, indeed, is a trial on the merits, and a final judgment entered as the law's conclusion upon the admitted facts, without the intervention of a jury. No jury is had simply because there are no facts to be ascertained. Every element of "a suit between man and man" is present, but, the facts being admitted, there is no "controversy" between them. There is no function to be discharged by a jury.

There is much to be said on both sides of the question submitted to our consideration, but the evolutions of society are constantly calling for new applications of principles. The principles do not change, but their application is ever changing. Nowhere is this more evident than in the application of the principles of the common law. The same is true to some extent of constitutional provisions. The substance, the substantial right guaranteed, is fixed

and permanent, but its application may be varied from time to time as the needs of civilized society require. Sometime these changes are wrought by changes in the language of the Constitution itself, as is illustrated by striking out the word "ancient" in the clause "ancient trial by jury," appearing in the earlier Constitutions, or by providing for a jury of less than the common law jury of twelve, as provided for the first time in our present Constitution. At other times there is an apparent change by construction. But in fact there is no change, only an application of the principle of the provision to a new state of facts. This is illustrated in the case of *Pillow* v. *Southwest Imp. Co.*, 92 Va. 144, 23 S. E. 32, 53 Am. St. Rep 804, and *Lake Bowling Alley* v. *Richmond*, 116 Va. 429, 82 S. E. 97. The constitutional guaranty of trial by jury had existed since 1776, but the legislature, by an act of assembly, dispensed with it in certain cases, and a new Constitution was thereafter adopted containing the same guaranty, and it was held that the guaranty did not apply because the procedure warranted by the act existed when the new Constitution was adopted, and was not taken away by it.

The constitutional provision is not to be frittered away, but it is the principle that is thus sacred and permanent, and not the mere language in which it is couched. The principle here involved is the right to a jury trial wherever disputed facts are involved in proceedings at law between man and man. There must be a controversy over facts. If there are no controverted facts, the law determines the rights of the parties. There is no need for a jury, and neither the language nor spirit of the Constitution guarantees a jury trial.

[14] The constitutional guaranty of a jury trial is by no means universal in its application. Although the word "suit" is used in the Constitution, it is conceded everywhere that the provision has no application to suits in chancery as

they existed at the time of the adoption of the Constitution, as the chancery courts exercised their functions without the intervention of juries at that time, and the guaranty extended only to such cases as were triable by jury at the date of adoption. *Pillow* v. *Southwest Imp. Co.*, 92 Va. 144; 23 S. E. 32, 53 Am. St. Rep. 804; *Davis* v. *Settle,* 43 W. Va. 17, 26 S. E. 557.

Demurrer to the evidence is a well established practice in this State and in constant general use. By this method of procedure the whole case is taken away from the jury and referred to the court for decision.

In *Reed & McCormick* v. *Gold,* 102 Va. 37, 51, 45 S. E. 868, 873, it is said: "The right to demur to the evidence has come down to us as a part of the common law procedure, along with the right of trial by jury; indeed, if there were no jury, there would be no demurrers to the evidence. Where the legislature has designed to prohibit demurrers to the evidence, it has done so in explicit terms, and section 2897 of the Code (sec. 5781, Code 1919), provides that in an action for insulting words 'no demurrer shall preclude the jury from passing thereon'."

In *Lynchburg Milling Co.* v. *Bank,* 109 Va. 639, 64 S. E. 980, there was an active controversy over funds in the hands of a garnishee, and a jury was empaneled to ascertain whether the fund was liable to the plaintiff's debt. At the conclusion of the plaintiff's evidence, the garnishee demurred to the evidence. The plaintiff denied the right of the garnishee so to demur. The court said:

"The plaintiff insists that it had an absolute right to a trial by jury under the statute, of which it was deprived by the court's action in requiring it to join in the demurrer. But that assignment is founded on a misconception of the office of a demurrer to evidence. It does not invade the province of the jury as triers of disputed facts. But, assuming that the evidence demurred to is true, the court is called on to determine whether such evidence as

a matter of law warrants a judgment for the demurree. In other words, it is a supervisory power over jury trials invoked and exercised by the courts whose duty it is to decide questions of law arising upon undisputed facts.

"In 6 Ency. of Pleading and Practice, 439, it is said: 'There is nothing in this practice which is in contravention of jury trial.' Citing *Hopkins* v. *Nashville &c. Ry. Co.*, 96 Tenn. 409, 34 S. W. 1029, 32 L. R. A. 354.

"That case contains an exhaustive review of the authorities, and shows that the practice obtains in about one-half of the States of the Union, while in the United States courts and the courts of other States much more drastic methods prevail, such as directing verdicts and ordering son-suits. The practice has come down to us from the common law and is too thoroughly embedded in our jurisprudence to admit of serious question."

In *Meade* v. *Meade*, 111 Va. 451, 69 S. E. 330, the trial was of an issue *devisavit vel non*, and the statute declared that in such case "a trial by jury shall be ordered." The statute, being a valid enactment, was as binding on the courts as the constitutional provision. The defendants demurred to the evidence, which the plaintiffs claimed they had no right to do. The court said:

"It is a well settled policy of our jurisprudence that in all civil cases juries are triers of the facts, while the law is determined by the court. It would require very clear and positive enactment to show that the legislature had changed the power of tribunals administering the law, by depriving courts of their judicial authority and entrusting the juries with such functions. There is nothing in section 2544 to justify the contention that the legislature has inaugurated such a policy. If the contention of appellants was sound, then a jury trying an issue of *devisavit vel non* would be judges of the law and facts, while the court would be stripped of its power, and would preside as a mere mod-

34

erator for the purpose of preserving order during the
progress of the trial. Such an anomalous state of affairs
cannot receive our approval. It is imbedded in our juris-
prudence that the law of the case must emanate from the
court."

\*      \*      \*      \*      \*      \*      \*      \*      \*

"It can be stated in general terms that sustaining a de-
murrer to evidence is not in violation of a statute providing
that the issue *shall* be tried by a jury where the evidence
is conceded to be true, and all legitimate inferences there-
from are admitted. *Hopkins* v. *Nashville Ry. Co.,* 96 Tenn.
409, 34 S. W. 1029, 32 L. R. A. 354."

The court, after quoting from the two previous cases
hereinbefore cited, adds:

"That a demurrer to the evidence, or the more modern
practice of directing the verdict, is admissible upon the
trial of an issue of *devisavit vel non,* see *Stuart* v. *Lyons,*
54 W. Va. 665, 47 S. E. 442; *Broach* v. *Sing,* 57 Miss. 115;
*Wagner* v. *Zeigler,* 44 Ohio St. 59, 4 N. E. 705; *Purdy*
v. *Hall,* 134 Ill. 303, 25 N. E. 645.

"In the case last cited the court says: 'With reference to
the statutory proceeding to contest by bill in chancery the
validity of a will, it is expressly stated in the statute (Rev.
St., 1874, c. 148, sec. 7), that the issue shall be tried by a
jury; and it follows that, in regard to the action of the
court in taking the case from the jury and directing a
verdict against the contestant, the same rule must be ap-
plied that obtains in respect to trials in suits at law. The
rule in actions at law is that when the evidence given at
the trial, with all the inferences that could justifiably be
drawn from it, is so insufficient to support a verdict for
the plaintiff that such a verdict, if returned, must be set

aside, the court is not bound to submit the case to the jury, but may direct a verdict for the defendant."

The reason why a demurrer to the evidence was allowed was because the facts were all ascertained. There were no disputed facts, and hence nothing for a jury to try. When the facts are ascertained the rights of the parties arising thereon present a question of law to be determined by the court. The same principle would seem to apply wherever the facts are definitely ascertained, regardless of the mode of procedure. The common law method of procedure on a demurrer to the evidence was deemed cumbersome in some of the States, and fell into disuse and then was substituted what was regarded as the more expeditious way of directing a verdict, which has not been regarded as infringing upon the constitutional guaranty of trial by jury. This practice was not adopted in this State to any extent, but instead we simplified and retained the common law demurrer to the evidence. For difference in the two modes of procedure on a demurrer to the evidence, see Burks' Pl. & Pr., sec. 257.

A case may also be taken from the jury without infringing the constitutional guaranty by a special verdict. Here the jury simply find the facts and refer the question of the legal rights of the parties to the court. The same result follows in what is termed a "case agreed" or a "special case" or "a general verdict subject to a special case." The two proceedings are similar in many respects and yet different. Burks' Pl. & Pr., sec. 298 and cases cited. The jury have the right to render a special verdict if they choose, but are not compellable to do so. 22 Ency. Pl. & Pr., 1013.

It will be observed that each of the illustrations given is an instance of common law procedure in which the rights of the parties are ascertained by the court, and that where the facts have once been admitted or ascertained, nothing

is left but a question of law to be decided by the court. As said by Whittle, J., delivering the opinion of the court in *Lynchburg Milling Co.* v. *Bank, supra,* discussing the demurrer to the evidence, "It does not invade the province of the jury as triers of *disputed facts,* but, assuming that the evidence demurred to is true, the court is called on to determine whether such evidence, as a matter of law, warrants a judgment for the demurree. In other words it is a supervisory *power* over jury trials invoked and exercised by the court whose duty it is to decide questions of law arising upon undisputed facts." (Italics supplied.)

Again, under eminent domain proceedings, our homes may be invaded or even taken by those to whom the legislature has delegated the power, and there may be a serious "controversy" as to the amount of damages to be paid, and yet it has been held that we cannot demand a jury trial as a constitutional right. In *Lake Bowling Alley* v. *Richmond,* 116 Va. 429, 435, 82 S. E. 97, 99, where assessors (not a jury) were authorized to assess the damages resulting from lowering the grade of a street, it was said:

"Special assessment statutes are not amenable to objection on the ground that they deprive the landowner of his right to have a jury to ascertain what will be a just compensation for the land proposed to be taken (or damaged) for a public highway, unless the Constitution in terms requires that such compensation shall be so assessed. And there is no such requirement in the Constitution of Virginia. It is true that for many years prior to April 30, 1874, the statutes of the State provided for a jury of *ad quod damnum,* composed of twelve qualified jurors of the vicinage, to make these assessments. But the legislature of that year amended the former statute and substituted a commission in place of the jury to make the assessment. Acts 1874, p. 468. Since that enactment the Constitution of 1902 has been adopted, and the convention, with knowl-

edge of the fact that the legislature has substituted a commission for the jury of *ad quod damnum* in assessment cases, manifested no disposition to restore the former law. This circumstance affords persuasive evidence that the convention did not disapprove of the change wrought by the amendment referred to. *Pillow* v. *Southwest Imp. Co.*, 92 Va. 144, 23 S. E. 32; *Davis* v. *Settle*, 43 W. Va. 17, 26 S. E. 557.

"Under the act of 1908, as we have seen, the landowner has an appeal of right from the award of the assessor of damages to the corporation or hustings court of the city, where the matter is heard *de novo*, and in that way his rights are adequately safeguarded."

See also *Wilburn* v. *Raines*, 111 Va. 334, 68 S. E. 993; *Pillow* v. *Southwest Imp. Co.*, *supra; Davis* v. *Settle*, *supra,*

The practice of granting peremptory instructions directing a verdict never obtained to any considerable extent in this State, though it was said that where no other verdict could have been properly rendered, the error, if any, was harmless, and the judgment rendered thereon would not be reversed. *Hargrave's Adm'r.* v. *Shaw Land Co.,* 111 Va. 84, 68 S. E. 278, Ann. Cas. 1912, A. 151. The right to grant such instructions was in terms forbidden in 1912, Ch. 27, p. 52; Code, sec. 6003. The practice, however, is common and usual in many of the States and in the Federal courts, and it has not been regarded as a violation of constitutional guaranty of a jury trial. As we have seen, while it was not the practice in this State before it was forbidden, it was harmless error if the facts were such that no other verdict could have been properly found. It did not violate the constitutional guaranty of a jury trial.

Thus far we have examined only Virginia authorities, with the result that it appears that where there are no disputed facts, but only questions of law to be decided upon undisputed facts, there is no violation of the constitutional

guaranty of trial by jury. When we look elsewhere, we find the discussion of the subject wellnigh exhausted in the majority and minority opinions in *Slocum* v. *New York Life Ins. Co.*, 228 U. S. 364, 33 Sup. Ct. 523, 57 L. Ed. 879, Ann. Cas. 1914 D, 1029. There the question arose upon a Pennsylvania statute quite similar in substance to the Virginia statute, and the question was whether the statute as applied in the Federal courts was in conflict with the seventh amendment of the Constitution of the Uniited States, which declares that, "In suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury shall be otherwise re-examined in any court of the United States, than according to the rules of the common law." The court, by a vote of five to four, held that the Pennsylvania statute was in conflict with said amendment. Mr. Justice Hughes delivered a dissenting opinion, which was concurred in by Justices Holmes, Lurton and Pitney. The Pennsylvania court, in a long line of decisions, had held that the act did not conflict with the Constitution of that State guaranteeing a trial by jury. Under these circumstances, we have no inclination to depart from our former decisions bearing on the question which, so far as they go, are in harmony with the views expressed by Mr. Justice Hughes in his dissenting opinion. The proposition that the entry of an involuntary non-suit, or the direction of a verdict, does not conflict with the constitutional provision for a jury trial is so well settled that Mr. Justice Hughes does not take the trouble to cite any authority for it, but for convenient reference we give the holding of the Supreme Court in two cases:

"Where the trial judge is satisfied upon the evidence that the plaintiff is not entitled to recover, and that a verdict, if rendered for the plaintiff, must be set aside, the court may instruct the jury to find for the defendant, and

in such case no constitutional question arises; but if the court errs as a matter of law in so doing, the remedy lies in a review in the appellate court." *Treat Man. Co.* v. *Standard Steel & I. Co.*, 157 U. S. 674, 15 Sup. Ct. 718, 39 L. Ed. 853. "The granting by the trial court of a non-suit for want of sufficient evidence to warrant a verdict for the plaintiff, is no infringement of the constitutional right of trial by jury." *Coughran* v. *Bigelow*, 164 U. S. 301, 17 Sup. Ct. 117, 41 L. Ed., 442.

No brief analysis of the opinion would do it justice, and it is too lenghty to quote. It cites with approval a number of Pennsylvania decisions and decisions of Federal courts in that State upholding the constitutional validity of the Pennsylvania statute. Among them, *Fischer* v. *Scharadin*, 186 Pa. 568, 40 Atl. 1093; *Carstairs* v. *Bonding & T. Co.*, 54 C. C. A. 85, 116 Fed. 449; *Smith* v. *Jones*, 104 C. C. A. 329, 331, 181 Fed. 819, 823. The opinion of Mr. Justice Hughes is rested chiefly on the ground that the province of the jury is to decide questions of fact, not questions of law; that when no facts are shown which would warrant a jury in finding a verdict in favor of the party asking it, it is the duty of the court to enter judgment for the adverse party; that it is only the duty of settling disputed facts which is protected by the constitutional provision; that the Constitution only seeks to protect the substantial right, not mere forms of procedure; that demurrers to the evidence, compulsory non-suits and directed verdicts are all recognized as legitimate methods of taking a case from the jury; and that if a trial judge may lawfully direct what verdict a jury shall render, it is less objectionable to reserve his decision until after the verdict is rendered and then in a proper case enter judgment for the adverse party, as this method "permits the judge to give a decisive law question on which the case turns a more careful examination than he could do in the stress of a trial."

It seems to be admitted that if the trial judge had directed the jury what verdict to find and they had found that verdict, a judgment entered thereon would have been free from constitutional objection.   Having this in mind, Mr. Justice Hughes concludes his discussion as follows:

"It is said, however, that a new trial affords opportunity to a plaintiff to better his case by presenting evidence which may not have been available before.   But we are not dealing with an application for a new trial upon the ground of newly discovered evidence, or with the principles controlling an application of that sort.   We are concerned with the question whether a party has a constitutional right to another trial, simply because the trial court erred in its determination of a question of law which was decisive of the case made.   Had the trial court done what this court says it should have done, it would have directed a verdict for the defendant; and if the jury, simply following the instructions of the trial court, had so found, final judgment would have been entered and no new trial would now be granted.   Still the jury would not have passed upon any question of fact, but would simply have obeyed the judge. The opportunity to better the case on a second trial would probably be as welcome, but it would not be accorded.   I am unable to see any basis for a constitutional distinction which raises a constitutional right to another trial in the one case and not in the other.

"Of course, in any case, where there are questions of fact for the jury, the court cannot undertake to decide them unless a jury trial is waived.   But it would seem to be an entire misapprehension to say that trial by jury, in its constitutional aspect, requires the submission to the jury of evidence which presents no question for their decision and that, although there be no facts for the jury to pass upon, still the judgment which follows as matter of law can be arrived at only through a verdict.   This is to create

a constitutional right out of the practice of taking verdicts by direction. The ancient method of challenging the sufficiency of the evidence by demurrer, and thereupon either discharging the jury altogether or assessing the damages conditionally to await the decision of the demurrer. *Darrose* v. *Newbott,* Cro. Car. 143), reveals the function of court and jury in a clearer light, and shows that the idea that the jury upon a trial where there is no evidence to sustain a finding by the jury can be reached only through a verdict could not have been entertained at the time the Constitution was adopted."

[15] We have found no satisfactory answer to this view of the case. The object of the statute is to put an end to litigation, to obviate repeated trials and the delay and expense of litigation, and to remove the temptation to perjury by patching up the weak places disclosed at a former trial, not by after-discovered evidence, but by the same witnesses relied upon at the former trial.

It was argued before us that the power given to the trial judge to enter such final judgment as to him should seem right and proper was a substitution of the opinion of the judge for that of the jury. This power does not come into operation until after the verdict has been rightly set aside, and when it does come into operation it is not an arbitrary power, but is subject to review on a writ of error. The judgment is not the determination of any question of fact, but is simply the conclusion of law upon the facts as they appear. The meaning of the statute is that, having rightly set aside the verdict "because contrary to the evidence or without evidence to support it," the trial court shall enter such final judgment as ought to be entered, or as the law requires upon the evidence before it. This does not mean necessarily a judgment in favor of the adverse party. It may be in favor of the party obtaining the verdict, but for a different amount from that found by the jury. Com-

pare *Gunn* v. *Union R. Co.*, 27 R. I. 320, 62 Atl.118, 2 L. R. A. (N. S.) 362.

[16] For the reasons hereinbefore stated, we are of opinion that a trial court is without power to set aside the verdict of a jury except upon the conditions hereinbefore set forth, and that when such verdict is properly set aside, the power to enter a final judgment conferred upon the court by section 6251 of the Code is not the power to determine any disputed fact in a controversy touching property or a suit between man and man, and is not forbidden by the Constitution of this State. Section 6251 of the Code is, in the judgment of this court, wise in its conception, valid in its enactment, and useful in its application.

[17-18] It was also argued before us that the statute under consideration is in conflict with section 6003, forbidding peremptory instructions directing a verdict. If the two sections can stand together they must. Black Interp. Laws, p. 363. We find no difficulty in harmonizing them. In the stress of the trial, when the evidence is all in, and the jury are waiting for the instructions of the court, and all of the other business of the court is suspended, the judge, who is to instruct as to the law of the case, has no time to examine authorities and weigh and consider them, it may be on important questions of first impression, and the legislature might well say that he should not at this stage of the case practically decide it on the merits by giving a peremptory instruction directing what verdict should be found. But these reasons do not apply after the verdict has been rendered, and when the motion to set it aside has been made, the judge may then take what time he needs for the examination and consideration of authorities, but more especially he can deliberately review and consider the whole evidence in the cause and determine whether or not the duty rests upon him to set aside the verdict of the jury. Compare *Dalmas* v. *Kemble*, 215 Pa. St. 410, 64 Atl. 559. If, however,

we were of opinion that the two sections could not stand together, we should be compelled to uphold the validity of section 6251 as the later of the two acts in the point of enactment; section 6003 having been simply carried into the Code from the Acts of 1912.

In referring to the revision of 1887, Riely, K., speaking for the court in *Gaines' Adm'r* v. *Marye,* 94 Va. 225, 227, 26 S. E. 511, said: "The Code is a revision of the statute law of the State as it existed at the time of the revision. It was adopted by the legislature as one act, and all its parts took effect equally and simultaneously. Notwithstanding the fact that the Code is a revision of the statute law, if its various sections are harmonius and their meaning plain, resort cannot be had in construing them to the original statutes to see if any error was committed in the revision. Where harmonious and their meaning clear, they speak for themselves, and must be interpreted and given effect as revised. If, however, there is a substantial doubt as to their meaning, the law which was the subject of the revision may be looked to in ascertaining their meaning. If they are inconsistent and cannot stand together, the original statutes, and the respective dates of their enactment may be examined to see what was the last expression of the will of the legislature on the subject. And this last expression of the legislature will, when ascertained, if it be embodied in the revision, must prevail in construing inconsistent and repugnant parts of the law as revised. *Winn's Adm'r* v. *Jones,* 6 Leigh (33 Va.) 74; and *U. S.* v. *Bowen,* 100 U. S. 508."

To the same effect, see Black Interp. Laws, pp. 363-4; and the following cases cited in support of the text. *Gibbons* v. *Brittenum,* 56 Miss. 232; *State* v. *Heidorn,* 74 Mo. 410; *Mobile, etc., R. Co.* v. *Malone,* 46 Ala. 391.

[19] It remains to be determined whether or not the trial court erred in setting aside the verdict because contrary

to the evidence, or without evidence to support it. This depends upon whether or not the contract "was made in reference to the rules", of the Interstate Cotton Seed Crusher's Association, of which both plaintiff and defendant were members, so that they became a part of the contract of the parties, and if so whether the plaintiff delivered the tanks or either of them, to the railroad company "in such time that under the ordinary course of transportation they should reach the seller before the expiration of contract time." As to one of the cars the jury found in favor of the plaintiff on both questions. The defendant insisted that the contract was made with reference to said rules, and an instruction upon the subject was given to the jury at its instance, and it cannot now complain of a finding in accord with that view. Upon the other question, that is whether the tanks or either of them were delivered in time, the burden of proof was upon the plaintiff, and a majority of the court are of the opinion that the evidence relied on is insufficient to show this essential fact and hence conclude that the trial court committed no error in setting aside the verdict and entering judgment for the defendant.

*Affirmed.*